**892**

ENVIRONMENTAL DEFENSE FUND, Natural Resources Defense Council, Sierra Club, National Parks and Conservation Association, State of New York, State of Connecticut, State of New Hampshire, Commonwealth of Massachusetts, State of Vermont, State of Minnesota, and State of Rhode Island, Plaintiffs,

Environmental Defense Fund, Natural Resources Defense Council, Sierra Club, National Parks and Conservation Association, State of New York, State of Connecticut, State of New Hampshire, Commonwealth of Massachusetts, State of Vermont, State of Minnesota, Plaintiffs–Appellants,

v.

Lee M. THOMAS, Administrator of the U.S. Environmental Protection Agency, and the U.S. Environmental Protection Agency, Defendants–Appellees,

Alabama Power Company, et al., Peabody Holding Company, Inc., Peabody Coal Company, Consolidation Coal Company, American Mining Congress, Asarco Incorporated, Magma Copper Company, Intervenors–Appellees.

No. 475, Docket 88–6142.

United States Court of Appeals,
Second Circuit.

Argued Nov. 30, 1988.

Decided March 22, 1989.

David R. Wooley, Asst. Atty. Gen., State of N.Y. (Robert Abrams, Atty. Gen. of State of N.Y., Peter H. Schiff, Deputy Sol. Gen. of New York, of counsel), James T.B. Tripp, Environmental Defense Fund, New York City (Robert E. Yuhnke, Environmental Defense Fund, Boulder, Colo., of counsel), David Hawkins, Natural Resources Defense Council, Howard Fox, Sierra Club Legal Defense Fund, Washington, D.C., Hubert H. Humphrey III, Atty. Gen. of State of Minn. (Ann Seha, Sp. Asst. Atty. Gen., State of Minn., of counsel), Jeffrey L. Amestoy, Atty. Gen. of State of Vt. (J. Wallace Malley, Jr., Asst. Atty. Gen., State of Vt., of counsel), Joseph I. Lieberman, Atty. Gen. of State of Conn. (Brian Comerford, Asst. Atty. Gen., State of Conn., of counsel), Stephen Merrill, Atty. Gen. of State of N.H. (George Dana Bisbee, Asst. Atty. Gen., State of N.H., of counsel), James M. Shannon, Atty. Gen. of Comm. of Mass. (Lee Breckenridge, Asst. Atty. Gen., Comm. of Mass., of counsel), for plaintiffs-appellants.

Jacques B. Gelin, Dept. of Justice, Washington, D.C. (Myles E. Flint, Deputy Asst. Atty. Gen., Michael A. McCord, Robert L. Klarquist, Dept. of Justice, Gerald K. Gleason, U.S.E.P.A., Washington, D.C., of counsel), for defendants-appellees.

Henry V. Nickel, Washington, D.C. (Michael L. Teague, F. William Brownell, Norman W. Fichthorn, Hunton & Williams, Alfred V.J. Prather, Edwin H. Seeger, Kurt E. Blase, Prather Seeger Doolittle & Farmer, Washington, D.C., Michael S. Devorkin, John Jacob Rieck, Jr., Doar Devorkin & Rieck, Vincent R. FitzPatrick, Jr., Margaret Murphy, White & Case, New York City, Nancy C. Shea, James R. Bieke, Bruce C. Swartz, Shea & Gardner, Washington, D.C., of counsel), for intervenors-appellees.

Before VAN GRAAFEILAND, WINTER and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

This appeal involves the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* (1982 and Supp. IV 1986) ("the Act"), and in particular its bifurcated jurisdictional scheme for judicial review of decisionmaking by the Environmental Protection Agency ("EPA"). The Act provides that suits to compel the Administrator to perform non-discretionary duties may be brought only in district courts, while petitions seeking review of the Administrator's discretionary actions must be brought in the Court of Appeals for the District of Columbia. *See, e.g., Citizens for a Better Env't v. Costle,* 515 F.Supp. 264, 268 (N.D.Ill.1981). Jurisdiction under the Act thus turns on the threshold question of whether the Administrator's challenged action (or inaction) is discretionary or non-discretionary.

In the instant appeal, a number of environmentalist groups, along with six states, have challenged the Administrator's failure to revise the "National Ambient Air Quality Standards" ("NAAQS") for sulphur oxides ("SOx"). SOx are causative agents of both acid rain and dry acid deposition—phenomena we will refer to collectively as "acid deposition." Judge Edelstein held that the Administrator's authority to revise those NAAQS is discretionary and that the district court therefore did not have jurisdiction to entertain the suit. *Environmental Defense Fund v. Thomas,* 85 Civ. 9507, 1988 WL 36332 (S.D.N.Y. April 19, 1988). Although we agree that the Administrator has discretion to decide on the precise form and substance of the NAAQS at issue, we believe that under the circumstances the Administrator has a non-discretionary duty to make *some* formal decision whether to revise those NAAQS. Subsequent published actions by the Administrator have begun the process of decisionmaking, however, and we remand so the district court may enter an order that the rulemaking be continued to final decision.

## BACKGROUND

The Clean Air Act was first passed in the 1960's and has since undergone two major legislative overhauls. The first of these overhauls, in 1970, established a multistage process for EPA evaluation of potential air pollutants. In the first stage, the EPA was, after scientific study, to publish "criteria" for the evaluation of any given potential pollutant. Section 108 of the Act, 42 U.S.C. § 7408 (1982). After the establishment of these "criteria," the EPA was to publish two types of initial NAAQS pursuant to Section 109 of the Act, 42 U.S.C. § 7409 (1982): (i) primary ambient air quality standards, designed to "protect the public health"; and (ii) secondary ambient air quality standards, designed to "protect the public welfare from any known or anticipated adverse effects associated with the presence of [a given] air pollutant in the ambient air." 42 U.S.C. § 7409(b).

The 1970 amendments distinguished between pollutants for which criteria had been announced before 1970 and pollutants for criteria were announced after 1970. In the case of pollutants for which criteria had been announced before 1970 (which included SOx), Sections 109(a)(1)(A) and (B) required the EPA to issue proposed initial primary and secondary NAAQS within 120 days of the passage of the 1970 amendments. In the case of pollutants for which criteria were announced after 1970, the amendments required the EPA to issue proposed initial primary and secondary NAAQS simultaneously with its publication of "criteria." The 1970 amendments added that both primary and secondary NAAQS "may be revised in the same manner as promulgated." 42 U.S.C. §§ 7409(b)(1) and (2).

The 1970 amendments also introduced into the statute a bifurcated jurisdictional scheme. In Section 307 of the Act, the 1970 amendments vested the Court of Appeals for the District of Columbia with exclusive jurisdiction to review a variety of rule promulgations and other "final actions" by the Administrator. 42 U.S.C. § 7607(b) (1982). In addition, Section 304 of the Act, the so-called "Citizen Suits" provision, permits any person to bring a civil action in a district court "against the Administrator where there is alleged a failure of the Administrator to perform any

act or duty under this chapter which is not discretionary with the Administrator...." 42 U.S.C. § 7604(a)(2) (1982).

The second statutory overhaul occurred in 1977. These amendments added Section 109(d) concerning the "review and revision" of NAAQS, which provides that:

[n]ot later than December 31, 1980, and at five-year intervals thereafter, the Administrator shall complete a thorough review of the criteria published under Section 108 ... and promulgate such new standards as may be appropriate.... The Administrator may review and revise criteria or promulgate new standards earlier or more frequently than required under this paragraph.

42 U.S.C. § 7409(d) (1982). It is this section that plaintiffs seek to enforce by this action under Section 304.

The pollutants involved in this appeal, SOx, are causative or acid deposition and belong to the class of pollutants for which criteria had been issued before the 1970 amendments. In 1971, the Administrator promulgated primary and secondary NAAQS for SOx. 36 Fed.Reg. 8186. The secondary NAAQS were reviewed by the Court of Appeals for the District of Columbia and were thereafter remanded to the Administrator with instructions to elaborate on their justification. *Kennecott Copper Corp. v. EPA*, 462 F.2d 846 (D.C.Cir. 1972). On that remand, the Administrator modified the secondary NAAQS. 38 Fed. Reg. 25679 (1973). The secondary NAAQS as modified were not designed to protect against the deleterious effects of SOx associated with acid rain and dry acid deposition—deleterious effects on water quality, wildlife, soils and forests, and corrosive effects of SOx on building materials, monuments and products. 38 Fed.Reg. 25680 (1973). Neither the primary SOx NAAQS as promulgated in 1971, nor the modified secondary SOx NAAQS of 1973, have been revised since.

In 1979, the Administrator undertook a review of the air quality criteria for SOx in response to the passage of Section 109(d)(1) in 1977. 44 Fed.Reg. 56731 col. 2 (1979). In 1982, that review resulted in the publica-tion of new criteria both for SOx and for particulate matter, another pollutant, which includes forms of SOx, listed under Section 108. The new criteria described in some detail the ill effects associated with acid deposition. The Administrator did not, however, issue revised NAAQS for SOx. Indeed, the Administrator took no official public action, neither revising the existing standards nor formally declining to revise them. In 1984 and 1985, the EPA issued a three-volume "Critical Assessment" on the acid deposition effects of SOx. This did not constitute a formal revision of the SOx criteria, and the Administrator again took no action in conjunction with the issuance of this "Critical Assessment."

In 1985, appellants brought the instant case in the District Court for the Southern District of New York, pursuant to Section 304, the "Citizen Suits" provision of the Act, to compel the Administrator to promulgate revised NAAQS for SOx. Their complaint alleged that the revised criteria of 1982 and the "Critical Assessment" of 1984 and 1985 constituted a formal finding that SOx caused acid deposition threatening to the public health and welfare. Appellants claimed that those findings imposed on the Administrator a nondiscretionary duty to revise the NAAQS for SOx, pursuant to Sections 109(b) and 109(d), in order to combat such health and welfare effects. Judge Edelstein disagreed. Looking to the language of Section 109(d), he concluded that the section created a mandatory duty only to revise pollutant criteria—an action the Administrator had taken in 1982. The Administrator, he held, had discretion not to revise the SOx NAAQS if he so chose. Because the duty to revise the NAAQS was discretionary, he concluded that the district court lacked jurisdiction over the dispute and dismissed the complaint.

One week after Judge Edelstein's decision, the EPA issued a "Proposed Decision Not To Revise the National Ambient Air Quality Standards for Sulfur Oxides (Sulfur Dioxide)." 53 Fed.Reg. 14926 (April 26, 1988). In that "Proposed Decision," the Administrator announced that he was for-

mally "propos[ing] not to revise [the primary and secondary] standards" for sulfur oxides, 53 Fed.Reg. at 14926 col. 1, and invited comments. However, the Administrator expressly excluded the problem of acid deposition from the list of welfare effects for which no revision of the secondary SOx NAAQS was necessary:

1. Based upon the current scientific understanding of the acid deposition problem, it would be premature and unwise to prescribe any regulatory control program at this time.

2. When the fundamental scientific uncertainties have been reduced through ongoing research efforts, EPA will craft and support an appropriate set of control measures.

*Id.* at 14936 col. 1. In light of this EPA action, appellants have narrowed their claim on appeal. Rather than challenging both the primary and secondary NAAQS, they abandoned the challenge to the primary NAAQS, which the Administrator has formally proposed not to revise in his "Proposed Decision," and limited their appeal to a challenge to the secondary NAAQS, the revision of which the Administrator has declared to be "premature and unwise."

### DISCUSSION

Section 304 grants jurisdiction to district courts to compel the Administrator to perform non-discretionary statutory duties. *Cf. Council of Commuter Org. v. Metropolitan Transp. Auth.*, 683 F.2d 663, 665 (2d Cir.1982). Section 307 grants exclusive jurisdiction to the Court of Appeals for the District of Columbia over "final" and other actions of the EPA. Because Section 307 embodies a grant of exclusive jurisdiction, it appears that if the District of Columbia has jurisdiction over the present action, the district court does not. *New England Legal Found. v. Costle*, 666 F.2d 30, 33 (2d Cir.1981). If the District of Columbia Circuit does not have jurisdiction, however, then either the district court has jurisdiction or appellants have no forum in which to assert their claims.

Appellants take the position that the district court has jurisdiction and must order

the Administrator to revise the secondary NAAQS. Appellees argue that the Administrator may stand pat, deciding neither to revise the NAAQS nor to make a public decision that revision is unnecessary. In their view, such a non-decision is unreviewable by the Court of Appeals for the District of Columbia under Section 307 because it involves no decision or other agency "action" and is also invulnerable to challenge in district courts under Section 304 because it is discretionary. We disagree with both parties.

In view of the revised criteria and "Critical Assessment," we believe the Administrator must make *some* decision regarding the revision of the NAAQS that is thereafter reviewable under Section 307 in the Court of Appeals for the District of Columbia. Because the duty to make *some* decision is non-discretionary, it is enforceable under Section 304 in the district courts. Appellants argue that in the present case a revision is mandatory and should be ordered by the district court. The substance of the Administrator's decision is beyond the power of the district court, however, its authority being limited to ordering the Administrator to make a formal decision. Were we to order a revision, we would have to set out criteria governing that revision, and the district court would potentially have to apply those criteria in an enforcement proceeding. An order to revise would thus plunge the district court into the merits, matters that are the exclusive province of the District of Columbia Circuit. We appreciate that this distinction is somewhat artificial but believe it is necessary to confine the district court's authority and to defer to the authority of the District of Columbia Circuit. The April 26, 1988 "Proposed Decision Not To Revise," however, has begun the formal process of decisionmaking, and we remand for entry of an order directing that process to continue.

■ Our analysis begins with an examination of the jurisdiction of the Court of Appeals for the District of Columbia. In *Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654 (D.C.Cir.1975), that court held

that "a challenge to the Administrator's refusal to revise a standard of performance is in effect a challenge to the standard itself and so can be brought only in this court under Section 307(b)(1) of the Clean Air Act...." *Id.* at 656. This language suggests that the District of Columbia Circuit has exclusive jurisdiction over the instant matter. The categorical language of *Oljato* is, however, misleading. *Oljato* involved Section 111 of the Act, which, at that time, included language permitting, but not requiring, the Administrator to revise the "standards of performance" for new stationary sources of air pollution. Because the statute included no stated deadlines for revision of the standards in question, the *Oljato* court could reasonably treat the decision to revise or not to revise as one wholly within the discretion of the Administrator. Since *Oljato*, however, the District of Columbia Circuit has distinguished between those revision provisions in the Act that include stated deadlines and those that do not, holding that revision provisions that do include stated deadlines should, as a rule, be construed as creating non-discretionary duties. *Sierra Club v. Thomas,* 828 F.2d 783, 791 (D.C.Cir.1987). Section 109(d), the provision at issue here, includes a stated deadline of "[n]ot later

than December 31, 1980, and at five-year intervals thereafter." *Oljato* thus does not apply.

The District of Columbia Circuit has also held that it may review agency inaction under the Administrative Procedure Act where the agency has unreasonably delayed in performing a duty over which the District of Columbia Circuit would have jurisdiction after final action under the Act. *Sierra Club,* 828 F.2d at 795–96. Thus, the District of Columbia Circuit arguably has jurisdiction on the grounds that the EPA has unreasonably delayed its decision whether or not to revise the secondary NAAQS for SOx. The District of Columbia Circuit was careful in *Sierra Club,* however, to limit its exclusive jurisdiction to cases involving "a right the denial of which we would have jurisdiction to review upon final agency action but the integrity of which might be irreversibly compromised by the time such review would occur." *Id.* at 796. Appellants' claimed right in the instant case is not one whose integrity is likely to be "irreversibly compromised." We therefore conclude that the instant action does not raise a claim within the exclusive grant of jurisdiction to the District of Columbia Circuit under Section 307.[1]

---

1. Our dissenting colleague argues that the District of Columbia Circuit has exclusive jurisdiction pursuant to the petitioning procedure outlined by way of dictum in *Oljato Chapter of Navajo Tribe v. Train,* 515 F.2d 654, 666 & 667 n. 20 (D.C.Cir.1975). We disagree. Because *Oljato* was decided before the enactment of Section 109(d), the *Oljato* court was interpreting a version of the Act that included no provision for the revision of NAAQS. The *Oljato* dictum was based on a Senate Report that, in proposing section 307, referred to "new information [which] will be developed and [which] may dictate a revision or modification of any promulgated standard or regulation established under the act." *Oljato* thus stated that suits involving such "new information ... [which] may dictate a revision or modification" were subject to its exclusive jurisdiction. *Oljato,* 515 F.2d at 660–61 (quoting S.Rep. No. 91–1196, 91st Cong., 2d Sess. 41–42 (1970)). The *Oljato* court thus first determined that section 307 was the relevant jurisdictional provision, and then outlined a petitioning procedure for satisfying the requirements of that section. We, by contrast, have determined that section 304 is now the relevant statutory provision. The dictum in *Oljato* was

made obsolete after the statutory overhaul that produced Section 109(d). Because the statute now expressly provides for the revision of standards, the problem of "new information ... [which] may dictate a revision or modification" has now been addressed by Congress and the Act includes mandatory language that necessarily alters the jurisdictional scheme.

We also note here our disagreement with our colleague's reading of *Sierra Club v. Thomas,* 828 F.2d 783 (D.C.Cir.1987). While it is true that *Sierra Club* states that "a duty of timeliness must 'categorically mandat[e]' that *all* specified action be taken by a date-certain deadline," *id.* at 791 (quoting *National Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 712 (D.C. Cir.1975)), that holding is not at odds with our ruling in this case. The statutory provision at issue here, Section 109(d), reads: "[n]ot later than December 31, 1980, and at five-year intervals thereafter, the Administrator shall complete a thorough review of the criteria ... and promulgate such new standards as may be appropriate...." Our colleague argues that this provision does not require that *all* specified action be completed within the stated deadline —i.e., the Administrator is left to exercise his

Having determined that the District of Columbia Circuit does not have exclusive jurisdiction, we now address what mandatory or, as the case may be, discretionary duties are created by the following language of Section 109(d) of the Act. To repeat, that section states in pertinent part:

> [n]ot later than December 31, 1980, and at five-year intervals thereafter, the Administrator shall complete a thorough review of the criteria published under section 108 ... and promulgate such new standards as may be appropriate.... The Administrator may review and revise criteria or promulgate new standards earlier or more frequently than required under this paragraph.

Clearly this section includes both mandatory ("shall complete," "required") and non-mandatory language ("as may be appropriate"). Appellees rely on the phrase "as may be appropriate," arguing that Judge Edelstein was correct in holding that that language confers on the Administrator a wholly discretionary authority to revise the NAAQS, not to revise them, or simply not to address the issue with a formal public opinion. Appellants argue that, as a matter of statutory construction, Section 109(d) must be interpreted in light of the mandatory language of Sections 109(a) and (b). Section 109(a), which requires the initial promulgation of NAAQS, contains clearly mandatory language directing the Administrator to issue NAAQS within 120 days for those pollutants for which criteria had been published before 1970 and to issue proposed NAAQS simultaneously with the publication of criteria for newly identified pollutants. Appellants argue that Section 109(d) should be read in light of this clearly mandatory language.

We find this argument unpersuasive. Section 109(d) contains no cross-reference to Section 109(a). Moreover, it is

difficult to perceive why the standard for the promulgation of initial NAAQS should be identical to that for revised NAAQS. Congress could have repeated the mandatory language of Section 109(a) in Section 109(d), but did not do so. Appellants also argue that Section 109(d) should be read in light of Section 109(b)(2), which declares that secondary NAAQS "shall specify a level of air quality the attainment and maintenance of which in the judgment of the Administrator ... is requisite to protect the public welfare...." Section 109(d) does include a cross-reference to Section 109(b). Because Section 109(b)(2) expressly entrusts the substance of secondary NAAQS to the "judgment of the Administrator," it is difficult to read it as imposing non-discretionary duties. Furthermore, that section adds that secondary NAAQS "*may* be revised in the same manner as promulgated" (emphasis added). This permissive language suggests that, contrary to appellants' contention, the Administrator has discretion not to follow the procedures for issuing initial NAAQS when revising NAAQS. Harmonizing Section 109(d) with Section 109(b) thus does nothing to further appellants' case.

Appellants also contend that language of Section 109(d) itself, read in isolation, imposes a mandatory duty to revise the NAAQS. The phrase "as may be appropriate," they argue, is subject to the section's command that the Administrator "*shall* make ... revisions." Under this view, the district court has jurisdiction to order the Administrator to make appropriate revisions in the NAAQS—power in short to issue orders affecting the substance of revised NAAQS. Again we disagree. The words "as may be appropriate" clearly suggest that the Administrator must exercise judgment and the presence

---

"appropriate" discretion as to whether or not to revise. This argument is, however, not inconsistent with our holding. We believe that the "specified action" under this section is the making of *some* decision within the stated deadlines, whether to revise new standards or not to revise. To the extent that the "specified action" is simply the making of *some* decision, *all* specified action *is* required to be completed within a

stated deadline—and, indeed, a stated deadline very close in language and meaning to the stated deadline in the *Train* case, in which the D.C. Circuit first announced its rule. *See Train*, 510 F.2d at 697 (interpreting statutory language requiring promulgation of regulations and guidelines "within one year of enactment of this title....").

of "shall" in the section implies only that the district court has jurisdiction to order the Administrator to make *some* formal decision whether to revise the NAAQS, the content of that decision being within the Administrator's discretion and reviewable only in the District of Columbia Circuit. *Cf. Natural Resources Defense Council v. New York State Dept. of Envtl. Conservation,* 700 F.Supp. 173 (S.D.N.Y.1988).

■ Appellants advance a final argument, based on our caselaw. Conceding *arguendo* that the "as may be appropriate" language creates only discretionary authority, they contend that the district court has jurisdiction to compel the Administrator to revise its secondary NAAQS, the content of the revision being left to the Administrator. Under this view, the Administrator does not have power to decide not to revise. This argument is based on *Natural Resources Defense Council v. Train,* 545 F.2d 320 (2d Cir.1976), which involved Section 108 of the Act. Section 108 requires the Administrator to evaluate potential air pollutants and then to publish a list of those which "endanger public health or welfare," employing the following language:

> (a)(1) For the purpose of establishing national primary and secondary ambient air quality standards, the Administrator shall within 30 days after December 31, 1970, publish, and shall from time to time thereafter revise, a list which includes each air pollutant—
>
> (A) emissions of which in his judgment, cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare....

In *Train,* the EPA had evaluated lead, and conceded that lead met its standard for pollutants that "endanger [the] public health or welfare." It refused, however, to include lead on its list of pollutants. The *Train* plaintiffs brought suit, under Section 304, the "Citizen Suits" provision, seeking to compel the EPA to include lead on its pollutant list. In agreeing with the plaintiffs, we reasoned that the EPA had a non-discretionary duty to list lead, noting that the language of Section 108 was clear-

ly mandatory and that the EPA had concededly found lead to "endanger public health or welfare." Because the duty to list lead was not discretionary in light of the finding of harmfulness, we held that the district court had jurisdiction to hear the suit and ordered the Administrator to include lead on his list of pollutants.

Appellants contend that *Train* requires a similar result in the instant case. They observe that the EPA's revised criteria of 1982 and its "Critical Assessment" of 1984–1985 both acknowledge the adverse effects of SOx-caused acid deposition. The published acknowledgements of those adverse effects are, appellants argue, the equivalent of the EPA's explicit concession in *Train* concerning the adverse effects of lead. The 1982 criteria and the "Critical Assessment" constitute, in effect, a formal declaration that revision of the SOx NAAQS is "appropriate" according to the terms of Section 109(d). In their view, the Administrator has thus already exercised his discretion, impliedly found revision to be "appropriate," and now has a non-discretionary duty, enforceable in the district court, to revise the NAAQS in line with his revised criteria.

This argument did not persuade Judge Edelstein, and it does not persuade us. Even if we were to treat the EPA's revised criteria of 1982 and its "Critical Assessment" of 1984–1985 as equivalent to the concession of the harmful effects of lead that underlay our holding in *Train*—and it is far from clear that we should do so, *cf. National Resources Defense Council, Inc. v. Thomas,* 689 F.Supp. 246, 254–56 (S.D.N.Y.1988)—*Train* is still distinguishable from the present case. The duty at issue in *Train* was a thoroughly ministerial one. We did no more than affirm an order compelling the EPA to include "lead" on a list and to issue some NAAQS for lead. We did not, however, specify the content of those NAAQS. *Train,* 545 F.2d at 328. *Train* thus stands solely for the proposition that the district court has jurisdiction, under Section 304, to compel the Administrator to perform purely ministerial acts, not to order the Administrator to make particular judgmental decisions. An order

in the instant case to the Administrator to revise the NAAQS for SOx would be essentially meaningless and unenforceable unless it also directed that he revise those NAAQS in a particular manner. Formulating the details of substantive NAAQS, however, clearly requires the sort of scientific judgment that is the "hallmark" of agency discretion, *Kennecott Copper Corp., Nevada Mines v. Costle,* 572 F.2d 1349, 1354 (9th Cir.1978); *Lead Industries Ass'n v. EPA,* 647 F.2d 1130, 1146 (D.C. Cir.), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 621, 66 L.Ed.2d 503 (1980), and is exclusively within the jurisdiction of the District of Columbia Circuit.

■ However, if *Train* does not justify all of the relief that appellants seek, that is not to say that it does not justify any relief at all. Although the district court does not have jurisdiction to order the Administrator to make a particular revision, we cannot agree with appellees that the Administrator may simply make no formal decision to revise or not to revise, leaving the matter in a bureaucratic limbo subject neither to review in the District of Columbia Circuit nor to challenge in the district court. No discernible congressional purpose is served by creating such a bureaucratic twilight zone, in which many of the Act's purposes might become subject to evasion. The 1982 criteria and the 1984–1985 "Critical Assessment" triggered a duty on the part of EPA to address and decide whether and what kind of revision is necessary. The district court thus does have jurisdiction to compel the Administrator to make *some* formal decision as to whether or not to revise the secondary NAAQS. *Cf. Natural Resources Defense Council v. New York State Dep't of Envtl. Conservation, supra.*

This reading of *Train* comports with our reading of the presence of both "shall" and "may" in Section 109(d). It also comports with the legislative history of Section 109(d). As the House Report stated,

> The Administrator is ... *required* to promulgate new standards and revise existing standards as are appropriate under the terms of section 109(b) of the act.

H.R. No. 294, P.L. 95–95, 1977 U.S.Code Cong. & Admin.News pp. 1077, 1261 (emphasis added). We recognize, of course, our obligation to defer to agency statutory construction where Congress's intent is not clear. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 *rehearing denied,* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed. 2d 921 (1984). Here, however, Congress's intent that the Administrator make *some* decision is clear.

Accordingly, we hold that, while the district court did not have jurisdiction to compel the Administrator to revise the NAAQS, it did have jurisdiction to compel the Administrator to take some formal action, employing rulemaking procedures, *see Thomas v. State of New York,* 802 F.2d 1443 (D.C.Cir.1986), either revising the NAAQS or declining to revise them.

However, the Administrator's "Proposed Decision Not To Revise" of April 26, 1988, inviting comments on his determination that a decision as to the advisability of revising the secondary NAAQS for acid deposition "would be premature and unwise," is a required procedure in the course of reaching a formal decision. If this process continues, and a formal decision is rendered, appellants will have obtained all the relief to which they are entitled in a Section 304 action. Whether the decision when reached is wrong on the merits— even egregiously wrong—will be for the District of Columbia Circuit to resolve. We remand so the district court can enter an order directing the Administrator to continue the rulemaking to formal decision.

Reversed and remanded.

MAHONEY, Circuit Judge, dissenting:

I respectfully dissent, and would affirm the district court's determination that it lacked subject matter jurisdiction.

I do not agree with my colleagues that affirmance would leave a "bureaucratic limbo subject neither to review in the District of Columbia Circuit nor to challenge in the district court." Rather, I would think the procedure outlined in *Oljato Chapter of Navajo Tribe v. Train,* 515 F.2d 654

(D.C.Cir.1975), was available to the plaintiffs here. Specifically:

> (1) The person seeking revision of a standard of performance, or any other standard reviewable under Section 307, should petition EPA to revise the standard in question. The petition should be submitted together with supporting materials, or references to supporting materials.
>
> (2) EPA should respond to the petition and, if it denies the petition, set forth its reasons.
>
> (3) If the petition is denied, the Petitioner may seek review of the denial in this court pursuant to Section 307.

*Id.* at 666.[1]

The quite limited role of a district court in the *Oljato* scheme is stated in the following terms:

> The Administrator's *failure to respond or inadequacy of response* may be appealable to the District Court under the APA even if the substance of the denial is not so appealable. In such a case, the District Court would have the power to demand that the Administrator issue a response, or a more complete response even if it would not have the power to invalidate the standard of performance or order a revision.

*Id.* at 667 n. 20 (emphasis added). The limited role which *Oljato* footnote 20 allows to a district court is inapplicable here, however, since the *Oljato* procedure has not been invoked.

I do not view the provision of Section 109(d)(1) that the Administrator "shall" complete a thorough review of criteria at specified five-year intervals "and promulgate such new standards as may be appropriate" as providing a stated deadline, within the meaning of *Sierra Club v. Thomas,* 828 F.2d 783 (D.C.Cir.1987), as to the promulgation of standards. *Sierra Club* states: "In order to impose a clear-cut nondiscretionary duty [enforceable under section 304], we believe that a duty of timeliness must 'categorically mandat[e]' that *all* specified action be taken by a date-certain deadline." *Id.* at 791 (quoting *National Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 712 (D.C.Cir.1975)). It doesn't seem to me that Section 109(d) meets this standard, since there is pretty clearly no requirement that standards be finally promulgated at the specified five-year intervals, or by any other date-certain deadline.[2]

I would accordingly view this case as falling within the rule stated in *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70, 75 (D.C.Cir.1984): "we hold that where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Circuit Court of Appeals." A footnote, appended to the quoted statement, specified

---

**1.** Footnote 1 of the majority opinion states that the "statutory overhaul that produced section 109(d)" rendered the *Oljato* procedure "obsolete." I see no indication in the pertinent language or legislative history that any such result was intended, either with respect to section 109(d) or more generally. The District of Columbia Court of Appeals has consistently reiterated the continuing authority of *Oljato* subsequent to the 1977 legislative overhaul. *See, e.g., Envtl. Defense Fund, Inc. v. Gorsuch,* 713 F.2d 802, 813 (D.C.Cir.1983); *United States Brewers Ass'n, Inc. v. EPA,* 600 F.2d 974, 978–79 (D.C.Cir.1979).

**2.** Footnote 1 of the majority opinion concludes that such a five-year deadline was imposed by section 109(d). The postulated deadline could be met, however, by a determination that no revision is appropriate at the time of the deadline, but a revision will be made if later develop-

ments warrant. This is essentially what the Administrator did here. In any event, this scenario points up the anomaly of forcing the Administrator's essentially discretionary section 109(d) determination to "promulgate such new standards as may be appropriate" into the straightjacket of section 304(a)(2) review of "any act or duty under this chapter which is not discretionary with the Administrator." In my view, the *Oljato* procedure provides a preferable approach to Administrator inaction in areas committed to his discretion. I note in this regard the majority statement that a decision with respect to revision was required "[i]n view of the revised criteria and 'Critical Assessment,'" and the necessary implication that courts other than the District of Columbia Court of Appeals will review, to some undetermined extent, the substance of discretionary decisions by the Administrator.

that this holding had "been considered separately and approved by the whole court, and thus constitutes the law of this circuit." *Id.* at 75 n. 24.

I therefore respectfully dissent.