980 F.2d 272
 35 ERC 2074, 137 P.U.R.4th 444, 23
Envtl. L. Rep. 20,357
 MONONGAHELA POWER COMPANY; West Penn Power Company;
Potomac Edison Power Company, Plaintiffs-Appellees,
v.
William REILLY, Administrator of the United States
Environmental Protection Agency, Defendant-Appellant.
Indianapolis Power & Light Company; Northern Indiana Public
Service Company; Southern Indiana Gas & Electric
Company; PSI Energy, Incorporated, Amici Curiae.
 No. 92-1786.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 30, 1992.
Decided Nov. 24, 1992.
As Amended Jan. 6, 1993.
As Corrected Jan. 8, 1993.
 
 David Carlisle Shilton, U.S. Dept. of Justice, Washington, D.C., argued (Vicki A. O'Meara, Acting Asst. Atty. Gen., John A. Bryson, Alan D. Greenberg, U.S. Dept. of Justice, Patricia Embrey, Judith Tracy, Office of Gen. Counsel, U.S. E.P.A., on brief), for defendant-appellant.
 Stephen E. Roady, Andrews & Kurth, L.L.P., Washington, D.C., argued (Thomas E. Starnes, Christine A. Jones, Andrews & Kurth, L.L.P., on brief), for amici curiae Indianapolis Power & Light, et al.
 William James Murphy, Law Offices of William J. Murphy, Baltimore, Md., argued (M. Blane Michael, Jackson & Kelly, Charleston, W.Va., on brief), for plaintiffs-appellees.
 Roger J. Marzulla, Akin, Gump, Hauer & Feld, L.L.P., Washington, D.C., argued (William J. Brealis, Fritz H. Schneider, Michael S. Ray, Washington, D.C., Cheryl M. Foley, Ronald J. Brothers, Barbara F. Gambill, PSI Energy, Inc., Plainfield, Ind., on brief), for amicus curiae, PSI Energy.
 Before PHILLIPS and LUTTIG, Circuit Judges, and TRAXLER, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 The Monongahela Power Company and two other utilities (collectively "Monongahela") brought suit against the Administrator of the Environmental Protection Agency to compel him to process their application for an extension of a compliance deadline and collateral request for emissions allowances, alleging that the Administrator had failed to perform a nondiscretionary duty under the Clean Air Act to process the application and request. The district court, 795 F.Supp. 789, granted Monongahela's motion for a preliminary injunction enjoining the Administrator to take such action, and he appealed. Because we conclude that the district court lacked jurisdiction to entertain the complaint, we vacate its order and remand the case with instructions that it be dismissed.
 
 I.
 
 2
 As part of the 1990 amendments to the Clean Air Act, 42 U.S.C. §§ 7401-7671, Congress authorized the Administrator to establish a program to control the effects of acid rain through limitations on emissions allowances. Under the program established by the Administrator, an affected utility that has been allocated allowances based on historical emissions has flexibility to comply with the new emissions requirements by adding to its industrial equipment sulfur dioxide control technology ("scrubbers"), switching to lower sulfur content coal, or purchasing additional of the limited, fully marketable allowances from other utilities to cover its own emissions. This latter allowance trading system represents the centerpiece of the program.
 
 
 3
 To encourage the use of scrubbers, certain utilities that install them are allowed to apply for a two-year extension of a compliance deadline. Id. § 7651c(d)(1). Utilities making such an application become eligible to receive, from a limited reserve, the additional allowances needed to cover their emissions for the extension period, as well as additional ("bonus") allowances for use after the extension period. Id. § 7651c(d). Anticipating that the demand for such allowances would outstrip their supply, Congress directed the Administrator to "review and take final action on each extension proposal in order of receipt." Id. § 7651c(d)(3).
 
 
 4
 On December 3, 1991, the EPA published proposed regulations that established the key features of the acid rain program, including a suggested means to determine the "order of receipt" of extension applications. See 56 Fed.Reg. 63,002 (1991). Despite the statutorily imposed May 15, 1992, deadline for promulgating final regulations, see 42 U.S.C. § 7651g(c)(3), the EPA only recently, on October 26, 1992, issued final regulations. See 58 Fed.Reg. 3590 (1993) (to be codified at 40 C.F.R.).
 
 
 5
 Owners and operators of Phase I utilities, the highest-emitting plants in the nation, must submit a permit application and compliance plan "in accordance with" the EPA's regulations by February 15, 1993. 42 U.S.C. § 7651g(c)(1)(A). Monongahela attempted to file an extension application much earlier, on March 19, 1991, and the EPA refused to act upon it. Instead, the agency stated that it would consider no applications until it had promulgated final regulations and that applications filed before that time would not be assigned a rank-order for purposes of determining their "order of receipt." J.A. at 218-19.
 
 
 6
 Monongahela brought this suit, alleging a violation of 42 U.S.C. § 7651c(d)(3), the provision requiring the Administrator to act upon applications "in order of receipt." Monongahela asserted that the Administrator had failed to perform a nondiscretionary duty within the meaning of the citizen suit provisions of the Act, 42 U.S.C. § 7604(a)(2), and sought a preliminary injunction requiring the Administrator to review and take final action on its extension application or to establish a ranking procedure that guaranteed consideration in order of receipt. In an amended complaint, Monongahela alleged that the Administrator's failure to process its application represented an "action unreasonably delayed," which is cognizable under 42 U.S.C. § 7604(a).
 
 
 7
 The Administrator argued below that the district court should dismiss the complaint for lack of jurisdiction and that, in any event, a preliminary injunction was inappropriate. The district court rejected both arguments, holding that the Administrator had failed to perform a nondiscretionary duty. The court entered a preliminary injunction requiring the EPA to rank Monongahela's application in order of receipt and to determine its entitlement to extension and bonus allowances. From this order, an appeal was taken.
 
 
 8
 The Administrator advances two arguments before this court. First, he contends that the district court lacked jurisdiction over Monongahela's complaint. Alternatively, he argues that the district court's preliminary injunction should be vacated as an abuse of its discretion. Because we agree with his former claim, we do not reach the latter.
 
 II.
 
 9
 We must first determine whether jurisdiction was proper only in the Court of Appeals for the District of Columbia Circuit pursuant to 42 U.S.C. § 7607(b)(1), which confers on that court exclusive jurisdiction over "petition[s] for review of ... nationally applicable regulations promulgated, or final action taken, by the Administrator." See Environmental Defense Fund v. Thomas, 870 F.2d 892, 896 (2d Cir.) ("Because [section 7607] embodies a grant of exclusive jurisdiction, it appears that if the District of Columbia has jurisdiction over the present action, the district court does not."), cert. denied, 493 U.S. 991, 110 S.Ct. 537, 107 L.Ed.2d 535 (1989). Such actions must be brought "within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register." 42 U.S.C. § 7607(b)(1). The Administrator characterizes Monongahela's claim as "in substance, an attack on a proposed nationally applicable regulation" because it allegedly challenges the scheme developed in the proposed regulations, Appellant's Br. at 28, and argues that it is therefore both premature and filed in the wrong court.[1] Contrary to the Administrator's assertions, Monongahela's complaint cannot be characterized as a petition for review of nationally applicable regulations, for at the time it was filed, the EPA had yet to promulgate any such regulations. We conclude, therefore, that the Court of Appeals for the District of Columbia Circuit did not have jurisdiction over Monongahela's claim. This does not end our inquiry, however, for we must yet determine whether the district court had jurisdiction over this claim under 42 U.S.C. § 7604(a)(2). See Environmental Defense Fund, 870 F.2d at 896 ("If the District of Columbia Circuit does not have jurisdiction ..., then either the district court has jurisdiction or [plaintiffs] have no forum in which to assert their claims."); cf. Sierra Club v. Thomas, 828 F.2d 783, 792 (D.C.Cir.1987) ("It does not follow automatically that, if the district court lacks jurisdiction, then it must lie in [the District of Columbia Circuit], for both courts have just so much jurisdiction as Congress has provided by statute.").[2]III.
 
 
 10
 Jurisdiction of the district court over this suit turns upon the question of whether the Administrator's challenged course of action violates a nondiscretionary duty imposed upon him by the terms of the Act. The Act sets forth its jurisdictional requirements:
 
 
 11
 Except as provided in subsection (b) of this section [notice requirements], any person may commence a civil action on his own behalf--
 
 
 12
 * * * * * *
 
 
 13
 (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator....
 
 
 14
 * * * * * *
 
 
 15
 The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, ... to order the Administrator to perform such act or duty, as the case may be....
 
 
 16
 42 U.S.C. § 7604(a). We need decide today only whether the statute imposed upon the Administrator a nondiscretionary duty to process extension applications before he promulgated final regulations implementing the statutory program. See Sierra Club v. Train, 557 F.2d 485, 488 (5th Cir.1977) ("The substantive issue in this case is one of statutory construction, specifically whether [the Act] imposes a discretionary or non-discretionary duty on the EPA Administrator.").[3] We conclude that the statute is silent on this question and that we must therefore defer to the Administrator's reasonable interpretation of the statute as not requiring the consideration of extension applications before the agency's final regulations were in place.
 
 A.
 
 17
 The district court concluded that the Administrator had a nondiscretionary duty under section 7651c(d)(3) to accept and review extension proposals immediately in the order of their receipt. J.A. at 357-58 ("[T]here is no statutory authority which suggests that Congress authorized the EPA to defer consideration of extension proposals until [promulgation of permit program regulations]."). At the heart of the court's holding was its conclusion that the Administrator's obligation to review proposals in the order of receipt is "distinct from" his obligation under 42 U.S.C. § 7651g(c)(3) to promulgate permit regulations. Id. at 357. The Administrator contends that the language of the Act not only does not impose upon him a nondiscretionary duty to review extension proposals prior to the promulgation of regulations, see Appellant's Br. at 20, it "directly contradicts" the conclusion that he had such a duty. Id. at 18. He argues in the alternative that, even if not dictated by the statutory text, his interpretation of section 7651c(d)(3) is a reasonable interpretation to which we must defer. Id. at 22-26.
 
 
 18
 We disagree with the Administrator that the language of the Act "directly contradicts" the conclusion of the district court. Title 42, section 7651c(d)(1) provides for utilities to petition for extensions "in [their] permit application under section 7651g."[4] Permit applications and compliance plans must, under the statute, be submitted "pursuant to regulations promulgated by the Administrator." See §§ 7651g(b), 7651g(c)(1). The Administrator argues that because utilities "must" petition for extensions in the permit application itself, and because the permit application must be filed in accordance with regulations promulgated by the Administrator, it necessarily follows that an extension proposal cannot be filed until regulations have been promulgated. From this syllogism, he reasons that he need not accept or review extension proposals prior to the promulgation of regulations.
 
 
 19
 Contrary to the Administrator's assertion, see Appellant's Br. at 22; see also Appellant's Reply Br. at 1, 7, however, section 7651c(d)(1) does not provide that a utility "must" petition for an extension in its permit application; that section provides only that a utility "may" petition for an extension in its permit application. While it may be reasonable to read section 7651c(d)(1) in the manner proposed by the Administrator, see discussion infra, it is not correct to say, as the Administrator does, that the language of section 7651c(d)(1) that a utility may petition for extensions in its section 7651g permit application "directly contradicts" the district court's conclusion.
 
 
 20
 The Administrator also contends that the "express reference" to section 7651g in section 7651c(d)(3) "preclude[s] the interpretation of [section 7651c(d)(3) ] adopted by the district court." Appellant's Br. at 21.[5] In this regard, the Administrator argues that the section's proviso that the Administrator's review and final action on extension proposals shall be "consistent with section 7651g" "plainly requires" that regulations be extant before proposals are accepted. Id. Again, although this may be a plausible interpretation of congressional intent, it is not manifest from the language of the statute that Congress so intended. Congress provided in section 7651c(d)(3) only that review and final action on extension proposals shall be "consistent with" section 7651g; it did not provide that review and final action shall be undertaken subject to the same requirements in section 7651g-- i.e., pursuant to regulations. It does not necessarily follow from the facts that permit applications must be made "pursuant to regulations promulgated by the Administrator," see 42 U.S.C. § 7651g(b), and that a source must submit a permit application and compliance plan by February 15, 1993, "in accordance with regulations issued by the Administrator," see id. at § 7651g(c)(1), that an extension proposal also must be submitted pursuant to promulgated regulations. Therefore, like the language of section 7651c(d)(1), the language of section 7651c(d)(3)'s proviso does not "directly contradict" or "preclude" the interpretation embraced by the district court.
 
 
 21
 Although we disagree with the Administrator that the statutory language unambiguously forecloses an interpretation of section 7651c(d)(3) that extension proposals must be immediately received and reviewed, we agree with him that the language of the statute does not expressly or by necessary implication make provision as to when the Administrator must begin either to accept proposals for extension or to review submitted proposals. It requires only that when he begins to review extension proposals, he review and act upon the proposals in the order in which they were received.
 
 
 22
 In accepting the Administrator's argument that the statute is silent as to when he must receive and review extension proposals, we of course reject Monongahela's argument that section 7651c(d)(3)'s requirement that the Administrator review and act upon extension proposals "in order of receipt" in itself imposes a duty to review and act immediately. This language does not define when the Administrator must accept proposals, undertake his review and act; rather, it is a limitation on the manner in which he must review and take final action on submitted proposals. He must review the proposals in the order in which they were received after he began receiving them.
 
 
 23
 Given Congress' silence as to the required timing of the Administrator's receipt and review of extension proposals, our inquiry devolves into whether the Administrator's interpretation of the statute not to require review of proposals prior to the promulgation of governing regulations is reasonable. See Train, 557 F.2d at 489 ("The EPA, as the agency charged with enforcement of the [statute at issue], construes this statute as imposing a discretionary duty, and in absence of any cogent argument that the agency's construction is contrary to congressional intent, the agency's construction will be sustained."); see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). We believe that it is.[6]
 
 
 24
 Although the Act does not unambiguously authorize the Administrator to await his regulations before reviewing and acting upon extension proposals, section 7651c(d)(1) does provide, as noted, that utilities may petition for extensions in their permit applications. A reasonable interpretation of this section is that Congress intended, as the Administrator contends, that extension proposals would be submitted only with permit applications. Assuming that this was Congress' intent, it may reasonably be inferred from the clear requirement in sections 7651g(b) and 7651g(c)(1) that permit applications be filed pursuant to regulations, that Congress did not intend for the Administrator to review extension proposals under section 7651c(d)(3) until his final governing regulations had been promulgated.
 
 
 25
 The reasonableness of this interpretation is underscored by the proviso in section 7651c(d)(3) that the Administrator's review and action shall be "consistent with section 7651g of this title," which section requires permit applications to be made "pursuant to regulations promulgated by the Administrator" and requires utilities to submit permit applications and compliance plans "in accordance with regulations issued by the Administrator." While one need not read this proviso as effectively requiring the existence of regulations for the processing of extension proposals, as does the Administrator, it may be reasonably so read, especially given the language of section 7651c(d)(1).
 
 
 26
 This interpretation of section 7651c(d)(3) is also supported by the fact that no other section of the statute provides for the submission of extension proposals. Finally, it is consistent with the reasonable expectation that Congress would have provided the EPA with a period of time within which to develop implementing guidelines before requiring the general public and the agency, respectively, to submit and review extension proposals.
 
 
 27
 The Administrator's interpretation is by no means the only possible interpretation of section 7651c(d)(3). As Monongahela argues, section 7651c(d)(1) could be fairly read as merely authorizing utilities to file their extension proposals with their permit applications, rather than as requiring that extension proposals be filed with permit applications. And section 7651c(d)(3)'s proviso need not be read as the Administrator does. Where, as here, however, Congress' silence gives rise to ambiguity as to its wishes, the administering agency is not required to adopt any particular interpretation from among the plausible alternatives; it need only demonstrate that the interpretation it advances is reasonable. Chevron, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11. The Administrator, for the reasons stated, has met this burden and accordingly we must defer to his interpretation.
 
 B.
 
 28
 Perhaps anticipating this conclusion, Monongahela argues that we should accord deference to completed agency rulemaking or factfinding adjudication only and that deference is especially inappropriate here because, allegedly, forces at the White House developed the agency's earlier proposed method for determining order of receipt. See Appellees' Br. at 29-30. Neither argument has merit. Even assuming that an agency's litigation position is entitled to less deference than are other articulations of the agency's views, cf. Church of Scientology v. IRS, 792 F.2d 153, 162 n. 4 (D.C.Cir.1986) (en banc ) ("There is some question ... whether an interpretive theory put forth only by agency counsel in litigation ... constitutes an 'agency position' for purposes of Chevron."), aff'd, 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987), the interpretation advanced by the Administrator in this case represents far more than a mere "litigation position."[7] The EPA consistently has maintained this position, at the very least since the time it rejected Monongahela's application. Now, of course, the agency has even embodied its interpretation in final regulations implementing the Act.
 
 
 29
 Monongahela's second argument, even if we accept as true the premise that the White House exerted influence over the EPA, is frivolous. The authority of the President over executive agencies and departments is without exception, save as may exist by law, because all executive power exercised by the federal agencies derives from the Chief Executive. The various agencies and departments are not autonomous of the President. See Sierra Club v. Costle, 657 F.2d 298, 405 (D.C.Cir.1981) ("recogniz[ing] the basic need of the President and his White House staff to monitor the consistency of executive agency regulations with Administration policy"). Thus, any policymaking influence exerted over the EPA by the White House--provided such was consistent with law--was fully permissible under our tripartite system of separated powers. Id. at 406 ("The authority of the President to control and supervise executive policymaking is derived from the Constitution; the desirability of such control is demonstrable from the practical realities of administrative rulemaking." (footnote omitted)).
 
 CONCLUSION
 
 30
 For the reasons set forth above, we conclude that the district court lacked jurisdiction over this action under 42 U.S.C. § 7604(a)(2). Therefore, we vacate its order and remand with instructions to dismiss the complaint.
 
 
 31
 VACATED AND REMANDED.
 
 
 
 [1]
 The Administrator does not contend that the district court lacked jurisdiction because EPA's refusal to process Monongahela's application constituted final agency action within the meaning 42 U.S.C. § 7607(b)(1)--for which appeal lies exclusively in the D.C. Circuit--and we do not address this issue
 
 
 [2]
 Monongahela's amended complaint asserted a claim under 42 U.S.C. § 7604(a) ("The district courts of the United States shall have jurisdiction to compel agency action unreasonably delayed...."). The district court did not address this provision, much less rely on it for jurisdiction, nor could it have done so. Even if jurisdiction could have existed under the "unreasonably delayed" language in the context of the relief sought, Monongahela failed to comply with the related notice requirement. See id. ("In any such action for unreasonable delay, notice ... shall be provided 180 days before commencing such action."). While the Administrator concedes that on October 11, 1991, Monongahela gave proper 60-day notice of the impending suit under section 7604(a)(2), see 42 U.S.C. § 7604(b)(2); Appellant's Br. at 27 n. 5, this notice did not suffice as notice of an action for unreasonable delay. Citizen suit notice requirements are "mandatory conditions precedent to commencing suit" and may not be avoided by employing a "flexible or pragmatic" construction. Hallstrom v. Tillamook County, 493 U.S. 20, 26, 31, 110 S.Ct. 304, 308, 311, 107 L.Ed.2d 237 (1989); accord Middlesex City Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 14, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981); Walls v. Waste Resource Corp., 761 F.2d 311, 316-17 (6th Cir.1985); Garcia v. Cecos Int'l, Inc., 761 F.2d 76, 81-82 (1st Cir.1985)
 It would transgress this authority to hold that a notice letter that specifically referred only to a "potential 'citizen suit' against the Administrator of the EPA arising under 42 U.S.C. § 7604(a)(2)," J.A. at 223, suffices as notice of an action for unreasonable delay under 42 U.S.C. § 7604(a). Monongahela did not even amend its complaint to compel agency "action unreasonably delayed" until April 9, 1992. It is difficult to conceive how Monongahela could be said to have given notice in its October letter of an intention to bring an action for unreasonable delay when it did not file a complaint alleging such delay until nearly four months following the filing of its original complaint under section 7604(a)(2), which not coincidentally was filed approximately sixty-nine days following the October notice.
 
 
 [3]
 The term "nondiscretionary" has been construed narrowly. See Environmental Defense Fund, 870 F.2d at 899 ("[T]he district court has jurisdiction under [section 7604] to compel the Administrator to perform purely ministerial acts...."); Sierra Club, 828 F.2d at 791 ("clear-cut nondiscretionary duty"); Kennecott Copper Corp. v. Costle, 572 F.2d 1349, 1355 (9th Cir.1978) (citizen suit provision was intended to " 'provide relief only in a narrowly-defined class of situations in which the Administrator failed to perform a mandatory function' " (quoting Wisconsin's Envtl. Decade, Inc. v. Wisconsin Power & Light Co., 395 F.Supp. 313, 321 (W.D.Wis.1975))); Mountain States Legal Found. v. Costle, 630 F.2d 754, 766 (10th Cir.1980) ("specific non-discretionary clear-cut requirements"), cert. denied, 450 U.S. 1050, 101 S.Ct. 1770, 68 L.Ed.2d 246 (1981)
 Monongahela assails these decisions, asserting that "[i]t is doubtful whether the more restrictive aspects of the decisions relied upon by [the Administrator] remain good law following the extensive amendments to the Citizen Suit provisions made in 1990." See Appellees' Br. at 25. The 1990 amendments, however, did not change the language of section 7604(a)(2). Rather, they added new language establishing jurisdiction over suits seeking to compel action "unreasonably delayed," a basis of jurisdiction not relied upon by the district court. See supra note 2.
 
 
 [4]
 That section provides in relevant part as follows:
 The owner or operator of any affected unit subject to an emissions limitation requirement under this section may petition the Administrator in its permit application under section 7651g of this title for an extension of 2 years of the deadline for meeting such requirement....
 42 U.S.C. § 7651c(d)(1) (emphasis added).
 
 
 [5]
 That section provides in relevant part as follows:
 The Administrator shall review and take final action on each extension proposal in order of receipt, consistent with section 7651g of this title and for an approved proposal shall designate the unit or units as an eligible phase I extension unit.
 42 U.S.C. § 7651c(d)(3).
 
 
 [6]
 The Administrator suggests that unless the plain terms of the statute impose a nondiscretionary duty, then none exists. See, e.g., Appellant's Br. at 22-23; Appellant's Reply Br. at 13. We are not persuaded that this is correct. Presumably, the existence of a nondiscretionary duty could be recognized through application of Chevron's rule of construction, even if it could not arise by inference, see Appellant's Br. at 22-23. For example, the Administrator could reasonably interpret an ambiguous statute so as to impose a nondiscretionary duty. In such a circumstance, the duty would exist no less than if it appeared on the face of the statute
 
 
 [7]
 Even if the EPA's interpretation were a mere litigation position, the justifications generally advanced for discounting such a substantive position are conspicuously absent in this case. See FLRA v. United States Dep't of Treasury, 884 F.2d 1446, 1455 (D.C.Cir.1989) (litigation position may not reflect the view of the agency heads or may have been developed hastily without presentation of contrary views), cert. denied, 493 U.S. 1055, 110 S.Ct. 863, 107 L.Ed.2d 947 (1990)