**NATURAL RESOURCES DEFENSE COUNCIL, INC., Plaintiff,**

**City of New York and State of New York Intervenor–Plaintiffs,**

**v.**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and William K. Reilly, as Administrator of the United States Environmental Protection Agency, Defendants.**

**No. 92–CV–1494 DRH.**

United States District Court, E.D. New York.

July 6, 1992.

Katherine Kennedy, Nancy S. Marks, Turner R. Odell, Jr. and James F. Simon, New York City and David Doniger, Natural Resources Defense Council, Inc., Washington, D.C., for plaintiff Natural Resources Defense Council, Inc.

O. Peter Sherwood, Corp. Counsel of the City of New York, New York City Law Dept., New York City by Peter H. Lehner, Asst. Corp. Counsel, for plaintiff City of New York.

Robert Abrams, New York State Dept. of Law, Albany, N.Y. by Joan Leary Matthews and Helene G. Goldberger, Asst. Attys. Gen., for plaintiff New York State.

Andrew J. Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. by Stanley N. Alpert, Asst. U.S. Atty., Craig D. Galli, U.S. Dept. of Justice, Environmental and Natural Resources Div., Environmental Defense Section, and Sara Schneeberg, U.S. E.P.A., Office of Gen. Counsel, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

The above-captioned action is a citizens' suit under the federal Clean Air Act. Plaintiffs, Natural Resources Defense Counsel, Inc., the City of New York and the State of New York challenge the failure of defendant United States Environmental Protection Agency ("EPA") to issue requirements concerning motor vehicle inspection and maintenance programs ("I/Ms"), as mandated by Congress. Currently before the Court is plaintiffs' motion for summary judgment. Pursuant to that motion, plaintiffs seek an order compelling defendant to issue the I/Ms within four months of this Order. The Court grants plaintiffs' request for the reasons stated below.

## BACKGROUND AND STATUTORY SCHEME

Pursuant to the Clean Air Act, 42 U.S.C. §§ 7401–7671q, the EPA is responsible for identifying pollutants that endanger the public health or welfare, and for promulgating such determinations in the form of national ambient air quality standards ("NAAQSs"). Each state is responsible for ensuring that its ambient air meets the NAAQS. Pursuant to that responsibility, each state must draft and submit for approval a state implementation plan ("SIP") which provides for compliance with the NAAQS. 42 U.S.C. § 7410(a). Areas that do not meet the NAAQS are designated "nonattainment areas". *See id.* § 7407(d).

The Clean Air Act was extensively amended in November 1990. Pub.L. No. 101–549, 104 Stat. 2399 (1990). Under the amended Clean Air Act (the "Act"), states are required to designate ozone and carbon monoxide nonattainment areas according to the severity of the air pollution,[1] and to comply with ozone and carbon monoxide NAAQS within specified time periods. *Id.* §§ 7512(a)(1), 7511(a)(1), (2). To achieve such compliance, the Act directs states to adopt revised SIPs which would include a number of measures to reduce motor vehicle air pollution. One measure requires states with nonattainment areas for ozone and carbon monoxide to develop motor vehicle inspection and maintenance programs. *See id.* §§ 7511a, 7512a. Depending on the severity of the nonattainment area, these motor vehicle and maintenance programs must be either "basic" or "enhanced". *See id.* §§ 7511a, 7512a. For example, pursuant to the Act, New York would be required to revise its SIP by November 15, 1992 to include enhanced motor vehicle inspection and maintenance programs for all

---

1. In New York State, twenty-two counties have not attained ozone NAAQS, and several others have not attained carbon monoxide NAAQS. New York City is a nonattainment area for both carbon monoxide and ozone.

urban areas with a population over 100,000. *See id.* § 7511(b)(1)(A).

To ensure that the states adopt effective programs, Congress required EPA to develop, oversee and implement I/Ms by November 15, 1991. *Id.* § 7511a(a)(2)(B)(ii). These I/Ms would represent minimum criteria for basic and enhanced programs. Congress further required that the I/Ms be incorporated by the states in their SIP revisions. *Id.* To date, EPA has failed to comply with the Congressional mandate. As a result, New York State has been unable to prepare its revised SIP, due by November 15, 1992.

In plaintiffs' original papers, they requested an order compelling EPA to issue draft I/Ms within ten days of the Court's determination of this motion and then to issue final I/Ms within sixty days. However, in their reply papers, plaintiffs propose a four month schedule for issuance of the final I/Ms. Defendant does not contest its duty to issue regulations by November 15, 1991, nor does it contest that it missed that deadline. Instead, defendant suggests a seven-month schedule in which to produce the final I/Ms.

## DISCUSSION

### I.

The Act states that "[w]ithin 12 months after ... [November 15, 1990], the Administrator *shall*" publish the required guidance for the states to adopt in their SIPs. 42 U.S.C. § 7511a(a)(2)(B)(ii) (emphasis added). Thus, it is undisputed that the Act imposes a mandatory, nondiscretionary duty on EPA to issue the required motor vehicle inspection and maintenance guidance by November 15, 1991 and that EPA has failed to comply with that deadline. It is also undisputed that this Court has the authority to compel EPA to comply with this nondiscretionary duty by a date certain established by court order. *Id.* § 7604(a) ("[t]he district court shall have jurisdiction, without regard to the amount in controver-

sy or the citizenship of the parties, to ... order the Administrator to perform ... a [nondiscretionary] duty."); *see Natural Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 705 (D.C.Cir.1975).[2]

Thus, the issue currently before the Court is not whether EPA's sluggishness has violated a statutory mandate, nor is it whether this Court has the equitable power to impose a deadline on EPA. Both of these issues are clear and undisputed. The only issue the Court must resolve is what remedy it should order to address EPA's failure to heed the Congressional directive enunciated in the Act.

### II.

In support of its motion for an order requiring that final regulations be promulgated four months from this Memorandum and Order, plaintiffs argue that EPA has a nondiscretionary duty with which it has failed to comply, and that it should now be required to fulfill that duty in compliance with a revised timetable. EPA maintains, on the other hand, that "[w]orking in the most diligent manner that is practicable, and taking into account all the required steps in the formal rule-making process, EPA can promulgate regulations within an ambitious approximately seven months of this Court's order, which is considerably faster than such major regulations ordinarily take." Defendant's Memorandum at 3. Accordingly, defendant asks the Court to use its equitable powers to fashion an order allowing EPA seven months to promulgate the final regulations.

### III.

 It is well established that a court, under such circumstances as are presented in the instant case, may extend the time for compliance with an explicitly mandated time limit. *See e.g., NRDC v. Train,* 510 F.2d 692, 712–13 (D.C.Cir.1975). However, these circumstances are limited to instances in which it would be infeasible or impos-

**2.** The Court also notes that plaintiffs have standing to bring this suit. 42 U.S.C. § 7604(a) (a citizen's enforcement action under the Clean Air Act may be brought by "any person ... on his

own behalf."); *see Sierra Club v. Morton,* 405 U.S. 727, 732–33, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636 (1975); *Sierra Club v. Ruckelshaus,* 602 F.Supp. 892, 896–97 (N.D.Cal.1984).

sible for EPA, acting in good faith, to meet the deadline, either due to budget and manpower constraints or because of the need for further study. *Sierra Club v. Gorsuch*, 551 F.Supp. 785, 787 (N.D.Cal.1982) (citation omitted); *see Train*, 510 F.2d at 713 (in evaluating an impossibility defense, court must "separate justifications grounded in the purpose of the Act from the footdragging efforts of a delinquent agency"). Courts have further held that impossibility claims by EPA should be carefully scrutinized and that EPA's burden in such cases is "especially heavy." *State of New York v. Gorsuch*, 554 F.Supp. 1060, 1064 (S.D.N.Y.1983) (citing *Alabama Power Co. v. Costle*, 636 F.2d 323, 359 (D.C.Cir.1980)).

In this circuit, the above-described circumscribed circumstances for extending a prescribed time have been further curtailed by the Second Circuit's recent holding that "when ... a statute sets forth a bright-line rule for agency action ... ('Not later than December 31, 1980 ...'), *there is no room for debate*—Congress has prescribed a categorical mandate that deprives EPA of all discretion over the timing of its work." *American Lung Ass'n v. Reilly*, 962 F.2d 258, 263 (2d Cir.1992) (emphasis added).

### IV.

Against that backdrop, the Court turns to defendant's proffer in support of a seven-month time frame for the issuance of guidelines. Defendant has submitted the declaration of Richard D. Wilson, the Director of the Office of Mobile Sources ("OMS"), Office of Air Radiation, EPA. OMS is responsible for overseeing the implementation of the I/Ms. Mr. Wilson's declaration states, *inter alia*, that his office expects to complete rules for several other statutorily mandated Clean Air Act programs between now and November 1992; that these rules are of enormous scope and complexity; and that in any case, EPA has been diligent in seeking comments on proposed rules as well as in conducting studies to evaluate the effectiveness of various alternative testing strategies. Moreover, he notes that EPA is currently consulting with OMB on the proposed I/Ms.

In light of this, Mr. Wilson estimates that interagency review of the proposed rules will be complete by July 13, 1992; the Administrator will sign the proposed I/Ms, transmit them to the Office of Federal Register for publication and have them published in the *Federal Register* by July 30; a forty-five day public comment period will be complete on September 14; it will take another sixty days, or until November 13, for staff review and then another sixty days, or until January 13, 1993, for EPA review; the Administrator will sign the final rule by January 18, 1992 and it will be published in the *Federal Register* by January 28, 1993.

In contrast, plaintiffs propose the following timetable: publication of draft proposed requirements by July 6; a forty-five day comment period until August 20; a sixty day staff review and EPA review by October 19; the Administrator's signature and issuance of final requirements to the states by October 23; and publication of the final requirements by November 2.

### V.

EPA's generalized complaints, both that the guidelines are complex and of enormous scope and that there are competing demands on their resources, do not amount to a claim of impossibility sufficient to justify a departure from a Congressional mandate. *See State of New York v. Gorsuch*, 554 F.Supp. at 1065 n. 4 (in absence of other circumstances making compliance with statutory mandate impossible, "competing concerns" do not establish Administrator's "'good faith'"). First, "shifting resources in response to statutory requirements and court orders is commonplace for EPA." *See Sierra Club v. Thomas*, 658 F.Supp. 165, 174 (N.D.Cal.1987). Further, at a Congressional hearing in May 1991, EPA Assistant Administrator for Air and Radiation William G. Rosenberg was asked whether EPA had sufficient personnel resources to meet the Clean Air Act regulations deadlines and he answered in the affirmative. Hawkins Declaration, Attachment A. Finally, and perhaps most

importantly, defendant does not offer any evidence to suggest that the time frame proposed by plaintiff would be impossible or infeasible to implement. *See id.*

The Court also notes that OMB's review of the draft proposed regulations does not at all justify EPA's delay. OMB derives its authority to review EPA regulations from Executive Order No. 12291, 3 C.F.R. 127 (1982), *reprinted in* 5 U.S.C.A. § 601 at 380–83 (West Supp.1992), which expressly acknowledges that OMB's review of regulations does not apply where it would conflict with statutory deadlines. *Id.* § 8(a)(2) ("[t]he procedures prescribed by this order shall not apply to ... [a]ny regulation for which consideration ... under the terms of this order would conflict with deadlines imposed by statute."); *accord Environmental Defense Fund v. Thomas*, 627 F.Supp. 566, 571 (D.D.C.1986) ("if a deadline has already expired, OMB has no authority to delay regulations subject to the deadline in order to review them under the executive order.").

The Court thus concludes that the evidentiary material submitted by EPA does not meet EPA's heavy burden of demonstrating impossibility or infeasibility. Short of this showing, EPA's proper recourse is to persuade Congress to amend the statute, not to defy the statute and seek relief with this Court. *See State of New York v. Gorsuch*, 554 F.Supp. at 1066. Because EPA has already failed to comply with the statutory deadline without adequate justification, the Court's only recourse is to develop a revised timetable.

## VI

■ Congress originally prescribed that EPA would have one year to promulgate regulations. According to Mr. Wilson's Declaration, EPA has already made significant progress in formulating regulations. For example, the assigned staff consulted with current vehicle program administrators, EPA Regional Office staff, state or-ganizations, environmental groups and various affected industry groups. Wilson Dec. ¶ 10. Further, the staff prepared a forty-page draft guidance document, pursuant to which public workshops were held. *Id.* ¶ 11. Public comments were received on the draft and reviewed by the staff. *Id.* ¶ 13. Finally, various studies were conducted, leading to a draft preamble and regulation which was written and processed through the EPA regulatory workgroup, *id.* ¶ 19, and forwarded to OMB. *Id.* ¶ 20. EPA is currently consulting with OMB to resolve all remaining issues on the regulations and supporting documentation. *Id.* ¶ 22.

While the Court recognizes that because of the public interest in a case such as this, "it would be inappropriate to set an infeasible schedule in order to punish a delinquent agency," *Sierra Club v. Thomas*, 658 F.Supp. 165, 171 (N.D.Cal.1987), it finds that EPA is sufficiently far along in the process of devising regulations to comply with the schedule plaintiff proposes. Moreover, the Court is mindful of the necessity of completing the final regulations before the November 15, 1992 deadline for the states to submit SIPs.[3] However, the Court will move back plaintiffs' proposed schedule by a few days, as specified below.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment and the entry of a scheduling order is granted. Accordingly, defendant is directed to publish proposed regulations by July 13, 1992, after which there will be a forty-five day public comment period ending on August 27. A complete staff review and senior EPA management review will take place by October 23, 1992. The Administrator will sign the final rule by October 27 and it will be published in the *Federal Register* by November 6, 1992.

---

**3.** Defendants claim to have addressed this problem by having committed to conditionally approving timely SIP submittals that, subsequent to the promulgation of the I/Ms by EPA, will be adapted to reflect the I/Ms. However, if the Court were to adopt such a proposal, states would be required to formulate and then reformulate SIPs. This would at best be an inconvenience to states, and at worst be a significant waste of state resources.

The Court will retain jurisdiction over this action to supervise compliance with this Order. The Administrator is further ordered to file with the Court a status report detailing compliance with this Order by October 23. If defendants fail to comply with their obligations under this Order, Administrator Reilly must show cause before this Court immediately as to why he should not be held in contempt or otherwise sanctioned.

SO ORDERED.