**AMERICAN LUNG ASSOCIATION, American Lung Association of Nassau–Suffolk, American Lung Association of Queens, American Lung Association of Brooklyn, Environmental Defense Fund, Natural Resources Defense Council, State of New York, State of Connecticut, Commonwealth of Massachusetts, State of Maine, State of Rhode Island, and Joseph Bergen, Plaintiffs,**

**v.**

**William K. REILLY, Administrator of the Environmental Protection Agency and the United States Environmental Protection Agency, Defendants.**

**No. 91–CV–4114 (JRB).**

United States District Court,
E.D. New York.

Nov. 6, 1992.

---

Stroock & Stroock & Lavan, New York City (Robert J. Zastrow, Gregory R. Belcamino, of counsel), for plaintiffs.

Craig Galli, U.S. Dept. of Justice, Environment and Natural Resources Div., Environmental Defense Section, Gerald Gleason, Sr. Atty., Air and Radiation Div., U.S. E.P.A., Office of the Gen. Counsel, Washington, D.C., Andrew J. Maloney, U.S. Attorney, E.D.N.Y., Brooklyn, N.Y. (Paul Weinstein, Asst. U.S. Atty., of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

### I. *Background*

This is a Clean Air Act citizens' suit and certain plaintiffs seek attorneys' fees and costs pursuant to 42 U.S.C. § 7604(d).[1] Stroock & Stroock & Lavan ("Stroock"), which represents plaintiffs American Lung Association, American Lung Association of Nassau–Suffolk, Queens, Brooklyn, and Joseph Bergen, requests $254,060.50 in attorneys' fees, $6,135.00 in paraprofessional (paralegals and librarians) fees and $21,-

697.32 in costs. Plaintiff National Resources Defense Council ("NRDC") moves for $4,207.50 in attorneys' fees. Plaintiff Environmental Defense Fund ("EDF") seeks $19,809.00 in attorneys' fees. Defendant EPA opposes on the ground that the fees and costs requested are unreasonable and should be reduced to no more than a total of $39,000.

These claims for fees and costs result from a short-lived litigation. The facts of the suit are set forth fully in *American Lung Ass'n v. Reilly*, 141 F.R.D. 19 (E.D.N.Y.), *aff'd*, 962 F.2d 258 (2d Cir. 1992), familiarity with which is assumed. Briefly, on October 22, 1991, the plaintiffs filed a complaint seeking injunctive and declaratory relief based on allegations that the EPA had violated its non-discretionary duty under the Clean Air Act to review the National Ambient Air Quality Standard ("NAAQS") for ozone every five years. *See* 42 U.S.C. § 7409(d)(1). A coalition of electric utilities and utility trade associations ("Alabama Power") then sought to intervene as defendants. While the EPA took no position, the plaintiffs opposed it and prevailed. *American Lung Ass'n v. Reilly*, 141 F.R.D. at 19, *aff'd*, 962 F.2d at 258. On January 3, 1992, plaintiffs filed a motion for summary judgment and a settlement occurred prior to the filing of any opposition by the EPA. On February 28, 1992, an Order and Final Judgment resolving the case was entered which required the EPA to conduct a review of the NAAQS for ozone and publish a final decision by March 1, 1993. Then follows plaintiffs' application for fees and costs.

The application delineates five phases of the litigation as follows: (1) filing notice letter, complaint, summary judgment; (2) intervention defense; (3) discovery; (4) settlement; and (5) other services. Plaintiffs

---

**1.** 42 U.S.C. § 7604(d) reads as follows: "The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 42 U.S.C. § 7604(d) (West 1983). Section 7604(d) refers to 42 U.S.C. § 7604(a), which authorizes citizens' suits against the Administrator of the Environmental Protection Agency ("EPA") for alleged failures to perform certain non-discretionary acts. 42 U.S.C. § 7604(a) (West Supp.1992).

submitted a chronological list of approximately 525 attorneys' time entries and resumes of five Stroock attorneys, Martin Baker, Esq., Robert Zastrow, Esq., Madeline Berg, Esq., Karen Jore, Esq., and Gregory Belcamino, Esq., in support of their application. Plaintiffs did not submit resumes for NDRC lawyer David Doniger, Esq., EDF lawyers James Tripp, Esq., and Robert Yuhnke, Esq., and the twelve unidentified Stroock paraprofessionals who billed time. Stroock later supplemented its application for fees and costs expended in preparing the instant application by submitting approximately 50 more attorney time entries.

The EPA opposed by dividing plaintiffs' work into the following eight phases: (1) notice letter; (2) reviewing and revising documents; (3) education of attorneys; (4) intervention defense; (5) discovery; (6) summary judgment; (7) client development;

and (8) recusal matters. The EPA estimated how much time plaintiffs expended on each phase. The Court determined that plaintiffs' time sheets were inadequate because they did not itemize the number of hours spent on completing each phase of the litigation. The Court directed plaintiffs to submit a revised supplemental bill itemized accordingly. This itemized bill breaks down plaintiffs' work into ten phases and indicates for each the corresponding number of attorney and paraprofessional hours and *pro rata* share of costs. The ten phases are similar to those set forth by the EPA except that Stroock divides settlement negotiations into two parts and does not provide itemization for time spent reviewing and revising documents. The parties also disagree about the number of hours spent on each phase. A synthesis of plaintiffs' application and supplemental application with all subsequent revisions results in the following itemization:

## STROOCK

| Litigation Phase | Attorney Hours | Para–Professional Hours | Attorney Fees | Para–Professional Fees | Office Costs |
|---|---|---|---|---|---|
| Background | 15.8 | 1.0 | $ 2,047.50 | $ 75.00 | $ 181.04 |
| Notice Letter | 79.5 | 1.9 | $ 14,665.00 | $ 142.50 | $ 1,267.32 |
| Client Dev. | 21.2 | 0 | $ 3,296.00 | $0 | $ 281.85 |
| Complaint | 119.3 | .5 | $ 22,541.50 | $ 42.50 | $ 1,931.85 |
| Settlement I | 60.9 | 0 | $ 10,425.50 | $0 | $ 892.89 |
| Sum. Jud. | 339.9 | 35.5 | $ 70,578.00 | $2,755.00 | $ 6,274.91 |
| Discovery | 46 | 5.8 | $ 11,054.00 | $ 390.00 | $ 979.30 |
| Recusal | 4.1 | 0 | $ 648.50 | $0 | $ 47.32 |
| Intervention | 428 | 37.2 | $ 88,592.00 | $2,730.00 | $ 7,815.86 |
| Settlement II | 55.2 | 0 | $ 10,401.50 | $0 | $ 901.12 |
| Fee Application | 115.4 | 0 | $ 19,811.00 | $0 | $ 1,123.86 |
| STROOCK TOTAL: | 1285.3 | 81.9 | $254,060.50 | $6,135.00 | $21,697.32 |

## NRDC

| | Attorney Hours | Para–Professional Hours | Attorney Fees | Para–Professional Fees | Office Costs |
|---|---|---|---|---|---|
| Notice Letter | 1.8 | 0 | $ 495.00 | $0 | $0 |
| Complaint | 2.0 | 0 | $ 550.00 | $0 | $0 |
| Settlement | 5.1 | 0 | $1,402.50 | $0 | $0 |
| Sum. Jud. | 5.0 | 0 | $1,375.00 | $0 | $0 |
| Intervention | .8 | 0 | $ 220.00 | $0 | $0 |
| Settlement II | .6 | 0 | $ 165.00 | $0 | $0 |
| NRDC TOTAL: | 15.3 | 0 | $4,207.50 | $0 | $0 |

EDF

| | | | | | |
|---|---|---|---|---|---|
| Notice Letter | 10.4 | 0 | $ 3,692.00 | $0 | $0 |
| Complaint | 4.6 | 0 | $ 1,633.00 | $0 | $0 |
| Settlement I | 9.8 | 0 | $ 3,479.00 | $0 | $0 |
| Sum. Jud. | 20.0 | 0 | $ 7,100.00 | $0 | $0 |
| Intervention | 9 | 0 | $ 3,195.00 | $0 | $0 |
| Settlement II | 2 | 0 | $ 710.00 | $0 | $0 |
| EDF TOTAL: | 55.8 | 0 | $ 19,809.00 | $0 | $0 |
| PL.'S SUBTOTAL: | 1356.4 | 81.9 | $278.077.00 | $6,135.00 | $21,697.32 |
| GRAND TOTAL: | $305,909.32 | | | | |

## II. Calculating the Lodestar

■ 42 U.S.C. § 7604(d) gives a court discretion to award reasonable attorneys' fees and costs. *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 560, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1985). EPA concedes and the Court finds that a fee award is appropriate under § 7604(d) because this lawsuit resulted in an extremely favorable settlement for the plaintiffs. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1982); *Friends of the Earth v. Eastman Kodak Co.*, 834 F.2d 295, 297 (2d Cir.1987). Awards under § 7604(d) follow the principles and case law governing fee awards under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. *See Delaware Valley*, 478 U.S. at 559–60, 106 S.Ct. at 3095–96. Reasonable attorneys' fees under § 7604(d) and § 1988 are calculated under the lodestar approach. *Id.* The lodestar is "the number of hours reasonably expended on the litigation ... multiplied by a reasonable hourly rate for attorneys and paraprofessionals." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir.1992).

### A. Hours Reasonably Expended

#### 1. *Inadequately Described and Unrelated Time Entries*

■ Plaintiffs bear the burden of properly identifying the source and nature of their time expenditures. *Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12, 103 S.Ct. 1933, 1941 n. 12, 76 L.Ed.2d 40 (1982). Many of the plaintiffs' time entries fail to meet the specificity requirement of *Hensley*. Stroock's application is replete with entries for conference calls and meetings held for unknown purposes and otherwise unspecified work.[2] These defects are present in time entries relating to every phase of the litigation. Inadequately specified and unrelated entries comprise 15% of the total Stroock hours and 1% of the total EDF hours and must be deducted. *See also New York Ass'n Retarded Child. v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983) (percentage reductions are an acceptable means to reduce fee applications).

#### 2. *Excessive, Redundant and Otherwise Unnecessary Work*

*Hensley* also instructs district courts to disallow fee requests for hours which are "excessive, redundant, or otherwise unnecessary...." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940. The EPA criticizes the application on a number of grounds which fall under the general rubric of overstaffing. In particular, the EPA contends that plaintiffs spent approximately 461 hours unnecessarily reviewing and revising their own work. Stroock alone assigned two part-

---

**2.** Examples include the following entries:

| Date | Lawyer | Hours | Relevant Entry Description |
|---|---|---|---|
| 11/1/91 | Yuhnke | .3 | "Call w/R. Zastrow" |
| 12/06/91 | Jore | 4 | "meeting with R. Zastrow" |
| 12/11/91 | Zastrow | 2.7 | "trip uptown" |
| 12/30/91 | Baker | 4 | "meeting with clients" |
| 2/25/92 | Belcamino | 8 | "office conferences R. Zastrow and K. Jore" |

ners, one permanent associate, who bills at an hourly rate just $25 per hour less than the junior partner, and two associates to the case. In addition, the NDRC and EDF assigned three more attorneys to the matter who spent most of their time reviewing and revising documents already prepared and revised by the five Stroock attorneys.

■ A careful review of the approximately 575 time entries indicates that plaintiffs overstaffed litigation chores. Seven attorneys worked on the notice letter to the EPA, six attorneys participated in drafting the complaint and eight attorneys joined in preparing the motion for summary judgment. This overstaffing is reflected by the inordinately high number of hours billed for these tasks. Plaintiffs spent 91.7 hours (approximately 11.5 individual work days) to prepare a three and one-half page notice letter, 125.9 hours (approximately 15.7 individual work days) to prepare the complaint and 364.9 hours (approximately 45.6 individual work days) to prepare the summary judgment motion.[3] The Court finds that use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work. *See also Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir.1983) ("[t]he more lawyers representing a side of the litigation, the greater the likelihood will be for ... [noncompensable] ... duplication of services").

■ The level of unnecessary work extends further. This lawsuit was modeled substantially after *Environmental Defense Fund v. Thomas*, 870 F.2d 892 (2d Cir.1989), *cert. denied sub nom., Alabama Power Co. v. EDF*, 493 U.S. 991, 110 S.Ct. 537, 107 L.Ed.2d 535 (1989) (EPA has a nondiscretionary duty under 42 U.S.C. § 7409(d)(1) to review the NAAQS for sulfur dioxide). Like the instant suit, *Thomas* was a Clean Air Act citizens' suit which concerned the EPA's duty to conduct rule-making for NAAQS. The applicable provisions of the Clean Air Act NAAQS for ozone and sulfur dioxide are the same. *See* 42 U.S.C. § 7409(d)(1). Plaintiffs relied on *Thomas* in their notice letter, complaint, and summary judgment motion and the EPA practically conceded that *Thomas* controlled.[4] Plaintiffs were very familiar with *Thomas* because six of the *Thomas* plaintiffs, EDF, NRDC, State of New York, State of Connecticut, Commonwealth of Massachusetts, and State of Rhode Island, were plaintiffs in the instant litigation. *Thomas* provided a blueprint from which the plaintiffs constructed their case.[5] The partial identity of parties and similar issues between *Thomas* and the instant lawsuit further substantiate that such heavy staffing was unnecessary and the amount of time spent completing litigation tasks was highly unreasonable.

The excesses of overstaffing, unnecessary and redundant time expenditures occurred in all phases of the litigation and must be deducted from the application. *See Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940; *New York Ass'n For Retarded Child.*, 711 F.2d at 1146. It is impossible to quantify precisely the number of such hours for each phase of the litigation. Therefore, the Court must resort to an overall percentage reduction predicated upon its determination of the amount of time so spent. *See New York Ass'n for Retarded Child.*, 711 F.2d at 1146. A fair and reasonable estimate is that 40% of plaintiffs' hours were excessive, redundant and otherwise unnecessary and must be deducted.

### 3. *Background Research*

■ Stroock billed 22.9 hours for time spent familiarizing attorneys with the Clean Air Act and the Federal Rules of Civil Procedure.[6] The plaintiffs' attorneys,

---

**3.** Individual work days are computed on the basis of an eight-hour work day.

**4.** *See* Pl.'s Com. ¶ 62–63; Def.'s Ex. 5 at 2; Pl.'s Mot.Sum.Jud.Mem.L. at 1, 11, 19, 21, and 24; Letter, Craig G. Galli, Attorney, U.S. Dept. Justice, Environment & Natural Resources Division, Washington, D.C. to Hon. John R. Bartels, 2/17/92, at 3.

**5.** *Id.* In addition, plaintiffs concede that *Thomas* was "similar" to the instant litigation. Pl.'s Reply Mem.L. at 5 n. 2.

**6.** The Court rejects Stroock's representation that it spent 15.8 hours on these matters. It spent

## 628

several of whom characterize themselves as experts in the field of federal environmental law, spent far too much time on these matters. Under the circumstances, 10 hours must be deducted from Stroock's application. *See Ramos,* 713 F.2d at 554; *New York Ass'n For Retarded Child.,* 711 F.2d at 1146.

#### 4. *Client Development*

■ Stroock includes 21.2 hours for soliciting potential co-plaintiffs to join the lawsuit. These hours would not be billed to clients and do not directly relate to success on the merits. *See Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. They must be deleted from Stroock's application.[7]

#### 5. *Recusal*

■ Stroock spent 4.1 hours researching what it classifies as a potential conflict of interest between the Court and the EPA. The application makes no attempt to explain the nature of the alleged conflict and in any event could not because none existed. These hours must be deducted from Stroock's application.[8] *See Hensley,* 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12.

#### 6. *Discovery*

■ Stroock enumerates 46 hours for discovery. The EPA represents that plaintiffs' filed their motion for summary judgment prior to receiving any answers to their discovery requests. Def.'s Mem.L. at 17. By filing its motion for summary judgment and a statement under Rule 3(g) of the Civil Rules of the U.S. District Court for the Eastern District of New York, the plaintiffs represented that there were no genuine issues of material fact. The discovery requests must have been irrelevant to the filing of the motion and these 46 hours must be deducted from Stroock's application.

#### 7. *Intervention*

■ Plaintiffs seek reimbursement for 437.8 hours spent opposing Alabama Power's motion to intervene as defendant in the lawsuit. The EPA explains that it took no position on Alabama Power's motion because its presence or absence in the case would not have altered its outcome. The EPA argues that § 7604(d) does not require it to pay attorneys' fees for expenditures against private defendants when the government takes no position. Two cases support this proposition. In *Avoyelles Sportsmen's League v. Marsh,* 786 F.2d 631, 636 (5th Cir.1986), the court modified a fee award under the fee provision of the Clean Water Act, 33 U.S.C. § 1365(d), to deny fees for plaintiffs' opposition to an appeal made by private defendants and intervenor-defendants in which the government did not participate. In *Love v. Reilly,* 924 F.2d 1492, 1495–96 (9th Cir.1991), the court modified a fee award under the fee provision of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), to deny fees for plaintiffs' opposition to a motion to stay an injunction made by a private intervenor-defendant in which the government took no position. *Love,* relying on *Avoyelles,* stated that the operative test is whether "claimed expenses were incurred in opposing improper government resistance to ...

22.9 hours as revealed through the following entries:

| Date | Lawyer | Hours |
|------|--------|-------|
| 10/15/90 | Belcamino | 3.5 |
| 10/16/90 | Belcamino | 3 |
| 10/17/90 | Belcamino | .6 |
| 10/23/90 | Belcamino | 1.3 |
| 10/24/90 | Belcamino | 2 |
| 11/14/90 | Baker | 1 |
| 11/15/90 | Belcamino | 8 |
| 11/05/91 | Zastrow | .4 |
| TOTAL | | 22.9 |

**7.** Stroock itself suggests that these hours, along with those spent on recusal, "might" be eliminated from the application because they "less tangibly ... achieve[d] the plaintiffs' goals." Pl.'s Reply. Mem.L. at 9.

**8.** *Id.*

[plaintiffs'] ... rightful demands." *Id.* quoting *Avoyelles,* 786 F.2d at 636. Plaintiffs respond by pointing to *Environmental Defense Fund v. Environmental Protection Agency,* 672 F.2d 42, 55–56 (D.C.Cir.1982) ("*EDF v. EPA*"), where the court granted a fee award under the fee provision of the Toxic Substances Control Act, 15 U.S.C. § 2618(d), for plaintiffs' opposition to unspecified matters raised solely by private intervenor-defendants. The operative test in *EDF v. EPA* was whether alignment of interests existed between the positions of the government and the intervenor-defendants. *Id.*

While *Avoyelles, Love,* and *EDF v. EPA* involved three different fee shifting statutes, *Avoyelles* and *EDF v. EPA* relied on common fee shifting principles to reach divergent results. *See Ruckelshaus,* 463 U.S. at 682 n. 1 and 691, 103 S.Ct. at 3276 n. 1 and 3280 (fee shifting provisions of Toxic Substances Control Act and Clean Water Act contain identical language which should be interpreted *pari passu* ). Since the Second Circuit has not had occasion to pass on the issue, the Court must determine which test should apply. The *Love/Avoyelles* test is overly formalistic because it turns exclusively on whether or not the government participates in a phase of a lawsuit. *EDF v. EPA* recognizes that alignment of interests between government and a private intervenor-defendant might exist even when the government takes no position on a matter. The *EDF v. EPA* approach is preferable because it instructs district courts to examine the facts and circumstances surrounding the government's abstention.

Applying the *EDF v. EPA* test to the instant motion, it is clear that an alignment of interests existed between the EPA and Alabama Power. Alabama Power filed a provisional answer to plaintiffs' complaint raising defenses almost identical to the EPA's answer. *American Lung Ass'n,* 141 F.R.D. at 21–22, *aff'd* 962 F.2d at 262.

Both the EPA's answer and Alabama Power's provisional answer raised a subject matter jurisdiction defense to the lawsuit. Alabama Power unsuccessfully raised it and thereby tested for the EPA its own defense. *Id.* at 262–63. In addition, plaintiffs' concern that Alabama Power's intervention might cause delays which would reduce the incentive to settle was not without basis.[9] The EPA notably moved to file the Order and Final Judgment only after Alabama Power's motion was denied. This alignment of positions is a sufficient basis under *EDF v. EPA* to render EPA liable for fees and costs incurred by plaintiffs' successful opposition to the intervention even though it formally took no position on the matter.

### B.  Reasonable Hourly Rates

Reasonable hourly rates "must be calculated according to 'the prevailing market rates in the relevant community'...." *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058 (2d Cir. 1989), quoting *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Plaintiffs bear the burden of establishing their hourly rates with " 'satisfactory evidence—in addition to the attorney's own affidavits ...' " *Id.* at 1059, quoting *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1547 n. 11. The district court must then ascertain whether " 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.' " *Id.* at 1058–59, quoting *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. The district court is permitted to rely in part on its own knowledge of comparable hourly rates charged in the community to determine reasonable hourly rates. *Id.* at 1059; *Miele v. N.Y. State Teamsters Conf. Pen. & Ret. F.,* 831 F.2d 407, 409 (2d Cir.1987). In addition, the district court may also adjust reasonable hourly rates to reflect the complexity of

---

**9.** For example, Alabama Power submitted an unpublished order in *Environmental Defense Fund, Inc. v. Hernandez,* 82–CV–6850 (RPA) (N.D.Cal.1983), which states in pertinent part, "[p]laintiffs may be correct that ... [Alabama

Power's] ... reason for intervening is to delay ultimate adoption of the mandate of Congress set forth in the Clean Air Act Amendments of 1977. However, ... the delay may be proper...." Alabama Power Reply Mem.L.Ex.B.

the legal tasks required. *See Delaware Valley*, 478 U.S. at 567, 106 S.Ct. at 3099.

■ Stroock offers an attorney's affidavit stating that its proposed rates are those "customarily ... accepted by Stroock's clients for representation in the U.S. District Court for the Eastern District of New York." Pl.'s Supp.Aff. ¶ 4. Stroock also submits resumes for its five lawyers, but nothing in support of its twelve unidentified paraprofessionals who seek reimbursement. NRDC submits that it requested an hourly rate of $275 per hour for David Doniger in a similar fee application before this Court. *National Resources Defense Council v. Environmental Protection Agency*, 797 F.Supp. 194 (E.D.N.Y.1992); Pl.'s Letter Amend. to Fee App., 9/24/92 at 1. EDF presents no supporting evidence beyond indicating where and when its attorneys attended law school. These showings fall far short of the requirements of *Chambless* and *Blum* and fail to establish

the reasonableness of plaintiffs' proposed hourly rates.

The Court finds that under the circumstances the Stroock proposed hourly rates exceed those prevailing in the New York City environmental law community for services by lawyers of reasonably comparable skill, experience and reputation capable of carrying out the relatively straightforward legal tasks required. The proposed rates for the twelve unidentified Stroock paraprofessionals are similarly inflated. The proposed rate for NRDC attorney David Doniger is reasonable because the EPA informs the Court that he has extensive Clean Air Act litigation experience and expertise. The proposed rates for EDF attorneys James Tripp and Robert Yuhnke must be modified because they furnished no specific information concerning their expertise. The Court finds reasonable hourly rates indicated as follows:

| Name | Law School | Position | Proposed Rate | Reasonable Rate |
|---|---|---|---|---|
| M. Baker | American '68 | Stroock Partner | $330–350 | $275 |
| R. Zastrow | Harvard '77 | Stroock Partner | $300–325 | $250 |
| M. Berg | Brooklyn '80 | Stroock | $275–285 | $200 |
| K. Jore | Brooklyn '87 | Stroock Assoc. | $195–200 | $150 |
| G. Belcamino | Yale '89 | Stroock Assoc. | $110–145 | $100 |
| 12 Unidentified Individuals | Schooling Unknown | Stroock Paraprofessionals | $50–95 | $50 |
| D. Doniger | Boalt '77 | NRDC— NY Office | $275 | $275 |
| J. Tripp | Yale '66 | EDF— NY Office | $355 | $100 |
| R. Yuhnke | Yale '72 | EDF— Colorado Office | $355 | $100 |

The adjusted reasonable hourly rates for Stroock attorneys yield a weighted average of $147.3 per hour.[10] This figure will be used for lodestar calculations *infra*.

**C. Costs**

The Court believes that the proposed costs are acceptable except that *pro rata*

reductions in costs must be made to correspond with those reductions to hours described *supra*.

**D. Final Calculations**

Predicated upon the foregoing analysis, deductions from hours and corresponding

---

**10.** The Stroock attorney weighted average is derived from the following percentages of work done by each attorney:

| Stroock Attorney | Total Hours | % Total |
|---|---|---|
| M. Baker | 25.8 | 2 |
| R. Zastrow | 274.2 | 21.3 |
| M. Berg | 45 | 3.5 |
| K. Jore | 211.8 | 16.5 |
| G. Belcamino | 728.5 | 56.7 |

*pro rata* reductions from costs are as follows: (1) 10 hours from Stroock background phase; (2) 21.2 hours from Stroock client development phase; (3) 4.1 hours from Stroock recusal phase; (4) 46 hours from Stroock discovery phase; (5) 15% reduction from Stroock hours and 1% reduction from EDF hours for inadequately specified entries; (6) 40% reduction from all hours for redundant, excessive and otherwise unnecessary work.

These adjustments reduce Stroock compensable attorney hours to 541.8, compensable paraprofessional hours to 34, NRDC compensable attorney hours to 9.18 and EDF compensable attorney hours to 32.9. The lodestar awards are accordingly as follows: $79,807.14 (541.8 × $147.30) for Stroock attorneys' fees, $1700.00 (34 × $50) for Stroock paraprofessionals, $9,139.38 for Stroock costs, $2,524.50 (9.18 × $275) for NRDC attorney fees, $3290.00 (32.9 × $100) for EDF attorney fees.

The Court has carefully considered the merits of the plaintiffs' motion, and for the reasons set forth above, it is GRANTED to the extent that Stroock is awarded a total of $90,646.52, NRDC is awarded a total of $2,524.50 and EDF is awarded a total of $3290.00.

SO ORDERED.