**AMERICAN LUNG ASSOCIATION,**
a nonprofit association;  et al.,
Plaintiff,

American Mining Congress, Arizona Mining Association, San Manuel Arizona Railroad Company, GSA Resources, Inc., American Iron and Steel Institute and Hearth Products Association, Plaintiff–Intervenors,

v.

Carol BROWNER, Administrator of the United States Environmental Protection Agency, Defendant.

No. Civ 93–643 TUC ACM.

United States District Court,
D. Arizona.

Oct. 6, 1994.

David S. Baron, Arizona Center for Law in Public Interest, Tucson, AZ, for American Lung Ass'n, a nonprofit ass'n, Arizona Lung Ass'n, a nonprofit corp. aka American Lung Association/AZ, Dana Larsen, Brian McCarthy.

Ted B. Borek, U.S. Atty., Tucson, AZ, Karen L. Egbert, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for Carol Browner, in her official capacity as Adm'r of the U.S. Environmental Protection Agency, U.S. Environmental Protection Agency.

Newman R. Porter, Lewis & Roca, Phoenix, AZ, James E. Gilchrist, American Mining Congress, Washington, DC, for American Mining Congress.

Newman R. Porter, Lewis & Roca, Phoenix, AZ, for Arizona Mining Ass'n, San Manuel Arizona Railroad Co., GSA Resources, Inc.

## ORDER

MARQUEZ, Senior District Judge.

*Background*

Underlying this law suit is the issue of whether the Defendant, United States Environmental Protection Agency (EPA), has established legitimate national ambient air quality standards (NAAQS) and particulate matter (PM) criteria. Plaintiff, American Lung Association, contends the EPA's current PM10 standard is too lax to protect the public health and welfare; Intervenors contend it is too strict.

In 1977 Congress directed the EPA to conduct formal reviews of ambient air quality standards, including PM, to ensure that EPA standards reflect the latest scientific knowledge and fully protect the public. Review and revisions, if appropriate, were to commence "not later than December 31, 1980, and at 5–year intervals thereafter...." 42 U.S.C. § 7409(d)(1).[1] Thereby, Congress mandated fixed-date deadlines for the EPA to conduct the required reviews and if appropriate, to revise air quality criteria and ambient air quality standards.[2] *American Lung Ass'n v. Reilly,* 962 F.2d 258, 263 (2nd Cir.1992). The EPA admittedly conducted only one review of PM criteria in December of 1982 and revised the NAAQS for PM in 1987 when it adopted the current standards.

Plaintiff filed this action to compel the EPA to perform its duty to review and, as appropriate, revise the national clean air standards for particulate matter. Defendant concedes it is in violation of the statutory mandate to review and revise NAAQS, including PM, at 5–year intervals. Summary judgment is appropriate where, as here, it remains only for the Court, acting in its discretion, to fashion an equitable remedy. *Sierra Club v. Ruckelshaus,* 602 F.Supp. 892, 898 n. 9 (N.D.Cal.1984) (only issue of fact is whether the EPA acted within statutory mandated deadlines—summary judgment is appropriate regarding purely equitable issue of how the court, exercising its discretionary power, should fashion a remedy).

Plaintiff submits that the next 5–year review deadline is December 31, 1995 and urges this Court to require the EPA to complete the mandated review and any appropriate revision by that date.[3] Alternatively,

---

**1.** The statute also provides that the Administrator may conduct earlier or more frequent review and revisions. 42 U.S.C. § 7409(d)(1).

**2.** A clear cut, non-discretionary duty of timeliness is imposed if a statute categorically requires that all specified action be taken by a date-certain deadline or if such a deadline is readily-ascertainable by reference to some fixed date or event. *Sierra Club v. Thomas,* 828 F.2d 783, 790, & n. 58 (D.C.Cir.1987).

**3.** It is not necessary for purposes of this motion to reach the issue of whether the statutorily required 5–year review and revision intervals are set from the December 31, 1980 deadline or whether the intervals and corresponding deadlines adjust with the culmination of a review and any formal revision decision.

Plaintiff proposes an 18–month schedule.[4] Defendants argue that a 4–year and 3–month schedule is necessary for it to conduct the review process to determine whether it is appropriate to revise the NAAQS, including PM criteria.[5]

*Legal Analysis: Discussion*

The Ninth Circuit has held that "[w]hen Congress has explicitly set an absolute deadline, congressional intent is clear ... The EPA cannot extract leeway from a statute that Congress explicitly intended to be strict." *Delaney v. E.P.A.*, 898 F.2d 687, 691 (9th Cir.), *cert. denied*, 498 U.S. 998, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990). The Court cannot afford relief and is bound to order compliance until such time as Congress chooses to alter its directive. *Id.*, at 690–91.

Against this backdrop, exists the well established principle that a district court has discretion to fashion equitable remedies other than injunctive relief. *Alaska Center for the Environment v. Browner*, 20 F.3d 981, 986 (9th Cir.1994) (citing *Weinberger v. Carlos Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)). Accordingly, the equity court will "not embrace enforcement ... of a party's duty to comply with an order that calls on him 'to do an impossibility.'" *Sierra Club v. Ruckelshaus*, 602 F.Supp. 892, 898–99 (N.D.Cal.1984) (quoting *N.R.D.C. v. Train*, 510 F.2d 692, 713 (D.C.Cir.1975)).[6]

■ In such circumstances, the agency carries a heavy burden to show that compliance with statutory mandated deadlines is impossible or infeasible. *Id.* at 899 (citing *Alabama Power Co. v. Costle*, 636 F.2d 323, 359 (D.C.Cir.1980). Excuses for delay must go beyond the general proposition that further study and analysis of materials will make final agency action better, *Id.*, because further study will always make everything better, and it is always easier to do something with more rather than less time. *Id.*

This Court has broad latitude to devise its equitable scheme for relief. *Alaska Center*, 20 F.3d at 986 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). Foremost, relief will be tailored to bring about congressional objectives, *Id.*; but, this Court is mindful not to intrude upon the agency's realm of discretionary decision making. *Id.* at 986–87.

■ Here, the statute involves an ongoing, periodic review and revision process set up by Congress to ensure that regulatory guidelines and standards which protect human safety and welfare are kept abreast of rapid scientific and technological developments. Congress mandated that review and any revisions should occur at 5–year intervals. Be-

---

4. The 18–month review schedule was proposed by Plaintiff in its Complaint filed February 28, 1994. At that time, 18 months would have met the December 31, 1995 review and revision deadline.

Alternatively, Plaintiff approximates an 18–month long review period by adding together what it considers to be analogous sections of the Act: section 108(a)(2) of the Act gives the EPA one year to issue criteria for newly adopted pollutants; section 109(a) of the 1977 Act gave the Agency 120 days to adopt the original NAAQS; and 60 days are allowed for advance notice in citizen suits under section 304 of the Act.

5. Defendant contends that the scientific and technical questions aimed at establishing PM criteria pose controversial issues at the frontiers of scientific knowledge and are necessarily time-consuming. Relevant to NAAQS revisions are certain key epidemiological studies which suggest that there is a statistical correlation between particulate pollution levels below the current NAAQS and injury to human health and welfare. Further, there is controversy regarding whether the reported health effects are caused by "course or fine" particles. The EPA contends that tightening or relaxing PM standards may or may not be appropriate depending on the reliability of the controversial studies.

Currently, there are several research initiatives underway which the EPA contends will help resolve some of the issues regarding PM standards. Although the EPA's proposed schedule does not account for completion of these studies, it does provide for the research results from the studies to be used in the review and revision process. The EPA contends that it has set forth a consensus building process which will ultimately generate a solid scientific basis on which it can rely to determine whether NAAQS revision is appropriate.

6. *Accord, Natural Resources Defense Council v. E.P.A.*, 797 F.Supp. 194, 198 (E.D.N.Y.1992) (equitable modification of explicit statutorily mandated deadlines shall not issue short of EPA's showing impossibility or infeasibility; failing this, EPA must persuade Congress to amend the statutory deadlines).

cause almost 12 years have passed since 1982 when PM criteria were last reviewed and almost 7 years have passed since 1987 when NAAQS was last reviewed and revised, the EPA has not merely missed a deadline, it has nullified the congressional scheme for a fixed interval review and revision process. The EPA further frustrates congressional intent by proposing a 4–year, 3–month review schedule with a final promulgation date of December 1, 1998. This schedule extends the mandated 5–year interval reviews and any possibility of revision to 11 years.

The EPA repeatedly argued, in its briefs and in open court, that any less time jeopardizes the review process and opens any decision it makes regarding NAAQS revision to judicial challenges of arbitrariness and capriciousness. The EPA's argument focuses on Congress's statutory language which requires that air quality criteria accurately reflect the latest scientific knowledge, 42 U.S.C. § 7408(a)(2), to the exclusion of the 5–year mandate for interval reviews and any revisions. However, because both provisions are mandatory, the statutory purpose falls within the confines of both requirements. As the EPA recognized within the context of its ozone review, "[a]t some point the process of incorporating new studies must end so that decisions can be made." 58 FR 13008, 13014 (March 9, 1993).

The EPA reports that since 1987, the date of the last NAAQS revision, it has engaged in an ongoing process of accumulating additional information on the effects of PM. On April 12, 1994, the EPA published notice in the Federal Register of its intent to commence the review process and to ultimately make its formal decision as to whether NAAQS should be revised. Thereafter, the EPA's proposed schedule includes approximately 3 more years of scientific review [7] and 2 years for regulatory development, to culminate in final agency action by promulgation in the Federal Register on December 1, 1998.

The EPA's proposed schedule (attached as Exhibit A) undoubtedly meets Congress's mandate that "[a]ir quality criteria for an air pollutant shall accurately reflect the latest scientific knowledge useful in indicating the kind and extent of all identifiable effects on public health or welfare...." 42 U.S.C. § 7408. With equal certainty, this Court concludes that EPA's proposed schedule wholly defeats the mandate by Congress that "... at 5–year intervals[ ], the Administrator shall complete a thorough review of the criteria published under section 7408 of this title and the national ambient air quality standards promulgated under this section and shall make such revisions in such criteria and standards and promulgate such new standards as may be appropriate in accordance with section 7408 of this title...." 42 U.S.C. § 7409.[8] This forces the Court to develop a revised timetable.

While EPA's proposed schedule may be a commendable plan for involving the general public and the scientific community in the NAAQS review and revision process, it fails to meet the Congressional mandate. The Court recognizes that this laudable goal, aimed at building consensus and developing a more definitive scientific base for NAAQS revisions, might be desirable. Unfortunately, significant delays such as those occurring here serve to defeat the 5–year mandate for interval reviews. The Court finds that, under the circumstances,[9] the schedule must be adjusted to provide for only those review activities required by Congress and essential to ensuring that within the context of 5–year intervals, EPA standards reflect the latest scientific knowledge so as to fully protect the public.

Specifically, this Court finds that Congress provided for an independent scientific review committee (CASAC) to be appointed by the Administrator. 42 U.S.C. § 7409(d)(2)(A). Congress required that CASAC, independent from the EPA, shall complete a review of

---

**7.** The EPA's proposed schedule does not reflect to what extent, if any, review activity has occurred either at the EPA or by CASAC.

**8.** In 1990, Congress rejected a proposal by the EPA based on similar arguments raised here. Congress refused to amend section 109(d) of the

Act to extend the next fixed-date deadline for NAAQS review and revision to 1998. (Plaintiff's Reply at Exhibit A.)

**9.** The EPA's relief is with Congress, not with the courts.

criteria documents and air quality standards, at least every 5 years and make recommendations for appropriate changes to the Administrator. 42 U.S.C. § 7409(d)(2)(B). "Congress created the Committee in order to provide an opportunity for objective evaluation of the scientific issues raised by the task of setting air quality standards." *Lead Industries Ass'n v. E.P.A.*, 647 F.2d 1130, 1171 (D.C.Cir.1980). This Court finds that CASAC review of the criteria document and the "staff paper" [10] (SP) is appropriate.

Review by the Office of Budget Management (OMB) serves no congressional purpose and is wholly discretionary. Therefore, it is not required, and the schedule shall exclude such review. *Natural Resources Defense Council v. E.P.A.*, 797 F.Supp. 194, 197 (E.D.N.Y.1992); *accord, Environment Defense Fund v. Thomas*, 627 F.Supp. 566, 571 (D.D.C.1986) (after deadline expires, OMB review may not further delay rulemaking).

After considering the tasks and time allowances proposed by the EPA, the Court finds that the following tasks and corresponding estimates of time shall comprise the review and revision schedule with which the EPA shall comply. The Court adopts EPA's proposed schedule for preparation of the criteria document (CD) [11] which sets forth the necessary activities from EPA's start date of October, 1993 to the end of April, 1995. The Court also adopts EPA's projection that CASAC review of the CD should be completed by the end of August, 1995.

Further, as the EPA estimates, running consecutively with the CD schedule, to the end of June, 1995, it shall complete a first draft of the SP setting forth the relevant criteria data and scientific analysis for determining whether NAAQS revision is appropriate. Commencing, thereafter, CASAC shall have 3 months, as estimated by the EPA, to complete its review of the SP draft. The

Court excludes from its revised schedule, the EPA's provisions for interim CASAC review of various DC and SP drafts, including participation by CASAC in the development of methodologies for assessment of exposure/risk analyses.

Also as proposed, after CASAC's review the EPA shall have 2 months to make any changes and to finalize the CD and SP. Thereafter, the EPA estimates that it can prepare the proposal packages in 5 months, this shall include publication of the proposed regulation in the Federal Register. The EPA set aside 90 days for public comment; but, the Court holds public comment to the statutory minimum of 60 days.[12] Following, the EPA shall have 5 months to make its administrative decision and prepare the final package so that promulgation of the new regulation can occur with publication in the Federal Register by January 31, 1997.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Leave to File Post–Argument Memorandum is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that Defendant EPA shall conform to the schedule set forth hereinbefore and shall promptly complete the legally required review and any revision of the PM criteria and NAAQS by January 31, 1997.

**IT IS FURTHER ORDERED** that Judgment be entered accordingly.

---

**10.** EPA describes the "staff paper" as an evaluation document which assesses the implications for certain standards and presents staff recommendations for decision making on NAAQS revisions. (Defendant's Opposition, Seitz's Declaration at ¶ 14.)

**11.** The criteria document establishes the base data for the NAAQS revision process. It sets out

the relevant scientific data which EPA intends to consider, integrates the information into topic chapters and draws appropriate conclusions.

**12.** Section 307 of the Act provides for a 30 day public comment period, with an additional 30 days for filing rebuttals or supplements. 42 U.S.C. §§ 7607(h), 7607(d)(5).